[L. A. No. 1365.    Department One.—August 7, 1905.]

JENNIE VINSON et al., Respondents, v. LOS ANGELES PACIFIC RAILROAD COMPANY, Appellant.

NEW TRIAL—MOTION ON MINUTES—PREPARATION OF STATEMENT— EXCUSABLE NEGLECT—RELIEF FROM DEFAULT—DISCRETION.—Notwithstanding the failure of one who has moved for a new trial on the minutes of the court to prepare and serve his proposed statement within ten days after the denial of the motion, of which he is bound to take notice, yet the court has discretion to relieve him from default upon a showing of inadvertence and excusable neglect. Where no abuse of discretion appears, the action of the court will not be disturbed, especially where it is exercised in favor of granting the relief, as it tends to bring about a conclusion on the merits, which is always to be desired.

ID.—ORDER OF RELIEF NOT PREMATURE — RELIEF FROM SUBSEQUENT ORDER REFUSING SETTLEMENT.—The order granting relief from the default in preparing the statement was not premature, and must stand as the final order for relief, notwithstanding relief granted on the same ground from a subsequent order refusing to settle the statement to avoid a contention that the relief must be made from an order.

ID.—APPEAL FROM JUDGMENT — REVIEW — STATEMENT SETTLED AFTER RELIEF GRANTED.—Notwithstanding there is no appeal from the order denying a new trial, the statement settled thereupon, after relief properly granted from default, may be considered on appeal from the judgment.

ACTION FOR DEATH OF MOTORMAN—COLLISION—CONTRIBUTORY NEGLI-
GENCE—DISOBEDIENCE TO INSTRUCTIONS—NONSUIT.—The heirs of
a motorman of a work train cannot recover in an action for his
death resulting from collision with another train if caused by
his own negligence in disobedience to known rules and instructions
obedience to which would have prevented the collision; and where
such contributory negligence appears affirmatively as matter of law,
in the evidence for plaintiffs, a motion for a nonsuit was improp-
erly denied.

APPEAL from a judgment of the Superior Court of Los
Angeles County. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

John D. Pope, for Appellant.

The refusal of the court to grant the nonsuit to which ap-
pellants were entitled as matter of law was error of law which
may be reviewed on appeal from the judgment. (*Warner*
v. *Darrow,* 91 Cal. 309, 27 Pac. 737; *Fogel* v. *Schmalz,* 92 Cal.
412, 28 Pac. 444.) The facts being undisputed, the question
of contributory negligence is one of law, and when the facts
proved by plaintiff show it as matter of law, a nonsuit should
be ordered. (*Nagle* v. *California etc. Co.,* 88 Cal. 86, 25 Pac.
1106; *Studer* v. *Southern Pacific Co.,* 121 Cal. 400-404, 66
Am. St. Rep. 39, 53 Pac. 942.) An employee of a railroad
who is injured as the result of disobedience to rules or orders
of the company cannot recover damages. (*Knight* v. *Cooper,*
36 W. Va. 232, 14 S. E. 999; *Illinois Cent. R. R. Co.* v. *Wins-
low,* 56 Ill. App. 462; *Francis* v. *Kansas City etc. Ry. Co.,* 110
Mo. 387, 19 S. W. 935; *Drake* v. *New York Cent. etc. R. R.
Co.,* 80 Hun, 490, 30 N. Y. Supp. 671; *Louisville and N. R.
Co.* v. *Mothershed,* 110 Ala. 143, 20 South. 67; *Louisville and
N. R. Co.* v. *Davis,* 99 Ala. 593, 12 South. 786; *Georgia R. and
B. Co.* v. *Oaks,* 52 Ga. 410; *Illinois Cent. Ry. Co.* v. *Neer,*
31 Ill. App. 126; *Central R. and B. Co.* v. *Kitchens,* 83 Ga. 83,
9 S. E. 827; *Kansas etc. Ry. Co.* v. *Dye,* 70 Fed. 24, 16 C. C.
A. 604; *Lowe* v. *Chicago etc. Ry. Co.,* 89 Iowa, 420, 56 N. W.
519; *Richmond etc. Ry. Co.* v. *Rush,* 71 Miss. 987, 13 South.
133; *Francis* v. *Kansas City etc. Ry. Co.,* 110 Mo. 389, 19 S.
W. 935; *Scott* v. *Eastern Ry. Co.,* 90 Minn. 135, 95 N. W.
892, 894.)

Waters & Wylie, for Respondents.

The negligence of the master in this case concurred proximately with that of a fellow-servant of the deceased motorman, and the master is liable for the resulting death. (*Williams* v. *Southern Pacific Co.*, 133 Cal. 550, 65 Pac. 822; *Grand Trunk Ry. Co.* v. *Cummings*, 106 U. S. 700, 1 Sup. Ct. Rep. 493; *New Jersey etc. R. R. Co.* v. *Young*, 49 Fed. 725, 1 C. C. A. 428; *Northern Pac. Ry. Co.* v. *Poirer*, 67 Fed. 885, 15 C. C. A. 52; *Crew* v. *St. Louis etc. Ry. Co.*, 20 Fed. 92; *Maupin* v. *Texas and Pacific Ry. Co.*, 99 Fed. 51, 40 C. C. A. 234; *Chicago etc. Ry. Co.* v. *Sutton*, 63 Fed. 395, 11 C. C. A. 251; *Northwestern Fuel Co.* v. *Danielson*, 57 Fed. 919, 6 C. C. A. 636; *Young* v. *New Jersey etc. Ry. Co.*, 46 Fed. 161; *Clyde* v. *Richmond etc. Ry. Co.*, 59 Fed. 395; *The Joseph . B. Thomas*, 81 Fed. 584.) It was for the jury to determine whether the rules were proved, and whether they were reasonable is a mixed question of law and fact for them to determine, under instructions from the court. (*Commonwealth* v. *Power*, 41 Am. Dec. 465, note; *Bass* v. *Chicago etc. Ry. Co.*, 36 Wis. 459, 17 Am. Rep. 495; *State* v. *Overton*, 4 Zab. (N. J.) 435-441, 61 Am. Dec. 671; *Morris etc. R. R. Co.* v. *Ayer*, 5 Dutch. (N. J.) 393, 80 Am. Dec. 217; *Day* v. *Owens*, 5 Mich. 520, 72 Am. Dec. 64; *Brown* v. *Memphis etc. R. R. Co.*, 4 Fed. 40; *Pittsburgh etc. Ry. Co.* v. *Lyon*, 123 Pa. St. 140, 16 Atl. 607, 10 Am. St. Rep. 520; *Jencks* v. *Coleman*, 2 Sum. 221, Fed. Cas. No. 7258; *Du Laurans* v. *St. Paul etc. R. R. Co.*, 15 Minn. 49, 2 Am. Rep. 102.)

ANGELLOTTI, J.—This is an action brought by the widow and minor children of Elmer Vinson, deceased, for damages alleged to have been suffered by reason of his death, which was alleged to have been caused by the negligence of defendant. The action was tried by a jury, which gave a verdict in favor of plaintiffs for five thousand dollars, and from the judgment entered thereon defendant has appealed.

A motion for a new trial was made upon the minutes of the court, and denied. No appeal was taken from such order. It is contended that the statement settled after the denial of the motion for a new trial should not be considered on this appeal for the reason that the defendant did not serve its proposed statement upon plaintiffs' attorneys within ten days

after the entry of the order denying the motion for a new trial. Upon the showing made by defendant's attorneys to the judge of the trial court, defendant was finally relieved from the effect of its default and the statement settled. It is claimed by plaintiffs that the showing made was not sufficient to authorize the trial judge to relieve defendant from such default, and their objections, the evidence in relation to the matter and the proceedings of the judge thereon have been properly preserved and set out in the statement, so that the rulings of the court thereon are before us for review.

The motion for a new trial was submitted to the trial court on May 23, 1902, and taken under advisement. The order denying the same was made and entered on July 21, 1902. One of defendant's attorneys was absent from Los Angeles from July 20th to July 30th, and neither of defendant's attorneys had actual notice that such order had been made until August 1, 1902, eleven days after the making thereof. On the next day, August 2, 1902, counsel for defendant gave notice of a motion to be made on August 4, 1902, for an order relieving defendant from its default in failing to prepare and serve its statement, and for an extension of time to so do. The ground of the motion was inadvertence and excusable neglect on the part of said attorneys, the affidavit of the attorney who had the matter specially in charge being to the effect that he was very much occupied with other matters at and about the time the order was made, and that he had inadvertently failed to notice that the order had been made. Concededly, no service of notice of the making of the order was required by the law, and it was the duty of the attorneys of the moving party to ascertain as to the entry of any such order. (See *Galbraith* v. *Lowe,* 142 Cal. 295, [75 Pac. 831].)

It appeared that there was a daily newspaper in Los Angeles known as the Los Angeles Daily Journal, which reported each day the proceedings of the superior court of Los Angeles County for the preceding day, and that many of the attorneys of Los Angeles, including defendant's attorneys, were subscribers of this paper, and used the same for the purpose of ascertaining as to such proceedings. In this paper, on July 22, 1902, was published in the appropriate place a statement as follows, viz.: "3775, Vinson v. L. A. & Pacific Ry. Co. Motion for new trial denied." The attorney of

defendant who had this matter in charge testified that although he ordinarily took note of matters published in such paper relating to cases in which he was interested, he was so very much occupied with professional engagements that, by inadvertence, he had failed to read the publication of July 22, 1902.

We cannot say that the court abused the discretion confided to it in granting defendant relief from its default in this matter. Whether or not the circumstances of a particular case are such that the mistake or inadvertence should be excused is a question the determination of which must, of necessity, be left largely to the court to which application is made, and it is well settled that this court will not interfere with the exercise of the discretion of that tribunal, except in a case where a clear abuse of discretion is apparent. Particularly is this so where the discretion is exercised in favor of the granting of the relief sought, as such action tends to bring about a conclusion on the merits, which is always to be desired. (*O'Brien* v. *Leach*, 139 Cal. 220, [96 Am. St. Rep. 105, and note, 72 Pac. 1004].) It has been said by this court that where the circumstances are such as to lead the court to hesitate in such a matter, it is better, as a general rule, that the doubt should be resolved in favor of the application. (*Watson* v. *San Francisco and Humboldt Bay R. R. Co.*, 41 Cal. 17.) The inadvertence or neglect here was one that well might occur to a reasonably careful man, there is no pretense of bad faith, and the application for relief was made so promptly after the expiration of the ten days that no appreciable injury could have been caused to plaintiffs by the delay.

On August 4, 1902, after hearing the parties, the trial court granted defendant's application for relief and also made an order granting defendant twenty days' further time within which to prepare and serve its statement. Subsequently, at the time fixed for settling the statement, plaintiffs objected to the settlement thereof upon various grounds, including the objection that the statement had not been served within the time allowed by law. The court overruled the objection, heard the proposed amendments, and gave directions for the engrossment of the statement. On December 13, 1902, the engrossed statement was presented, and the court

refused "to settle said statement for the reason that said statement was not prepared and served within the time prescribed by law." Thereupon notice was given of a motion for relief from said order on the ground of inadvertence and excusable neglect, upon the showing theretofore made. On December 15, 1902, over the objections of plaintiffs, the court granted the motion, and settled the statement. The particular objection made to the granting of this relief was that the court had by refusing to settle the statement on December 13, 1902, finally decided the matter, and was without power, especially in the absence of a further showing, to vacate its order.

If there be any force in this contention of plaintiffs, it is equally applicable to the order of December 13, 1902, refusing to settle the statement upon the ground therein stated, for by its order of August 4, 1902, the court had determined the same showing sufficient to excuse the delay in the service of the statement, *and had relieved defendant from its default in regard thereto.*

The theory of the trial court in refusing to settle the statement on December 13th appears from the record to have been that it might be held that its prior order granting relief was premature, and that no such order could be made in advance of some *order* made against defendant in the matter, and that this order was made for the very purpose of allowing defendant to make its application for relief. We know of no reason why the order of August 4th should be held to have been prematurely made. The default of defendant had then occurred and the effect thereof was to render any further proceedings in the matter of the settlement ineffectual, in the absence of an order relieving from such default. It was within the power of the court to relieve defendant therefrom within the time prescribed by statutes, and this it did by its order of August 4th.

We do not hold that a court would not have the power, under any circumstances, to reconsider its determination not to settle a statement, for it is not necessary to consider that question here, but we simply hold that if the objection of plaintiffs is well taken, it is equally applicable to the order of December 13th, relied on by them as the basis of their objection, and the order of August 4th relieving defendant

from its default must stand as the final order in regard thereto.

Coming to the merits of the appeal: At the conclusion of plaintiffs' case, defendant made a motion for a nonsuit upon the ground, among others, that it affirmatively appeared from the evidence introduced by plaintiffs that, if the death of deceased had been caused by any negligence, it was the negligence of the deceased himself. The answer of defendant, besides containing a denial of any negligence on its part, affirmatively alleged negligence on the part of deceased, contributing directly and proximately to his death.

The court denied the motion, and defendant excepted to the ruling, and has assigned such ruling as error.

We are unable to avoid the conclusion that the motion should have been granted upon the ground that plaintiffs' evidence showed contributory negligence on the part of deceased.

Deceased was killed in a collision on defendant's railroad, on the morning of October 11, 1901. The collision was between two trains operated by electric power, known as the "work train" and the "lemon train," and occurred at about 6:53 A. M. at a point about four thousand feet east of Sherman Station, Los Angeles County. To the east of Sherman and about 16,800 feet therefrom, on defendant's road, is Colegrove. Between these two places, defendant's road is a single track railroad, with several turn-outs or switches. About two thousand feet east of the point of collision was a turn-out leading to a gravel pit, and it was to this place that the work train was proceeding on its way from Sherman at the time of the collision. The lemon train was on its way from Colegrove to Santa Monica, by way of Sherman. The deceased was motorman on the work train. Both of these trains had their headquarters at Sherman, at which place there was a train dispatcher, who went on duty about seven A. M. The lemon train was a special train that was sent from time to time, as directed by the trainmaster, from Sherman, east to Colegrove, where there was a lemon exchange, for the purpose of carrying lemons west from Colegrove through Sherman to Santa Monica. Whenever this train was to be operated, an order to that effect was placed on the bulletin board at Sherman, stating the time of departure therefor, and on

the morning of the accident the order that had been posted was as follows, viz.: "Lemon train, 6 A. M. Car 72 to Exchange." The conductors and motormen of defendant were required by the rules of the company to consult the bulletin boards daily before taking trains. It had been the practice for months for the lemon train to leave at the time stated in the order, proceed directly to the lemon exchange at Colegrove, which took some fifteen or eighteen minutes, obtain its load of lemons, and, without any orders as to its movements, except the general order to avoid all regularly scheduled passenger cars, to go back to Sherman on its way to Santa Monica, reaching Sherman generally somewhere between 6:45 and 7 A. M. The posted order to the effect that it should leave Colegrove at a certain hour, meant that, having arrived at Colegrove, it should return to Sherman in this way. This practice was known to all the employees engaged in and about the operation of the work and lemon trains. Deceased had been employed in that connection for nearly a year, and was an experienced motorman. He must be held to have known from the notice on the bulletin board on October 11, 1901, that the lemon train had gone out at six A. M., that it would return in the usual way, and also that it had not returned at the time he started with the work train. The work train was one used for carrying men to their work in and about the roadbed, and for carrying gravel. It necessarily ran to different places, as circumstances required, and as specially directed. It was frequently used in the morning to carry defendant's workmen from Sherman to the gravel pit, and on the morning of the collision was being so used. It was the practice to start this train in time to get the men to the place where they were to work by seven o'clock A. M., without any special order as to the precise time of leaving Sherman, and it was the duty of the employee in charge thereof to keep out of the way of all regular and bulletined trains. This the evidence shows was thoroughly understood by deceased.

On the morning of the accident the work train was late in leaving Sherman, and did not leave earlier than 6:44 A. M., the usual time being somewhere about 6:15 A. M. The deceased was undoubtedly in charge of such train and responsible for its movements. Some reliance is placed by plaintiffs upon the fact that the roadmaster, T. V. Reuter,

was with the train, accompanying his men to the place of work; that an order had been made nearly a year before to the effect that he should thereafter "be in charge of all work in connection with handling gravel," and that "train-men on gravel trains and other employees will obey his orders," and that on this morning he told deceased just before they started, "We are ready. Pull out." It is claimed that this shows that deceased in moving and managing the train was acting directly under Reuter's orders. It is clear from the evidence, however, that it was thoroughly understood by both deceased and Reuter that this order gave Reuter only such authority over the work train as a roadmaster would naturally have in the matter of construction and repair, such as giving direction as to where it should be taken and what work it should do, and that the sole responsible party so far as its operations and the precautions against collision with other trains were concerned was the deceased. The case of *McKune* v. *California S. R. R. Co.,* 66 Cal. 302, [5 Pac. 482], relied on by plaintiffs, was one where a train was ordered to move by a train dispatcher, whose business it was to direct the movement of trains.

At the time of leaving it was clear at Sherman, but further up the road was a dense fog. On coming to this fog, deceased proceeded with his train at the rate of about four miles an hour, without taking any precautions against accident. It appeared that deceased had been specially warned and instructed that whenever the fog was so thick that he could not see far enough ahead he must send out a man to flag until he was in a safe place. This he did not do, nor did he ring his gong. He was proceeding up grade, when the lemon train came in sight, coming down grade, and from one hundred and fifty to two hundred feet distant. Both motor-men reversed their cars and applied their brakes, but it was apparently too late to avoid a collision.

There is nothing in the record which would justify the inference that there was anything in the equipment or condition of either train, or in the operation of the lemon train by those in charge thereof, that would constitute negligence on the part of defendant or the employees in charge of the lemon train, in any degree contributing to the collision. The only basis for a claim of such negligence on the part of defendant

is that it allowed these two trains to make this trip without having a train dispatcher on duty, allowed the lemon train to start on its return trip from Colegrove without orders from some one knowing where all trains were, and left it to the motorman of the work train to select as to how the two trains should pass one another on a single track road. If it be assumed that this practice was at all negligent on the part of defendant as regards other employees than the deceased we do not see how it can avail plaintiffs, in face of the fact that it was the special duty of the deceased, the motorman of the work train, in view of the posted orders as to the lemon train, to know of its whereabouts, and to avoid coming into collision with it. If he were negligent in the performance of this duty, and such negligence contributed directly to his injury, it is, of course, immaterial here whether the defendant was negligent in any of the respects above mentioned.

Whatever negligence there was apart from this, was the negligence of the deceased. The lemon train was moving according to the bulletined order and was on time. Those in charge thereof had no reason to expect to meet the work train on the main track, for they not only had no knowledge as to its probable location, but also had the right to assume that those in charge thereof knew as to the movements of the lemon train, and were bound to leave the lemon train a clear track. The deceased, in charge of the work train, knew that he was likely to meet the lemon train at any moment. If he did not know this, it was solely because he had failed to look at the bulletin board before leaving Sherman, or having looked, had failed to remember, in either of which contingencies he was clearly guilty of negligence, for it was his duty to advise himself, both for his own protection and that of his train, as to the presence upon the track over which he was to go of any bulletined trains, and to move his own train with reference thereto. He alone was the responsible party in this connection, and if he failed to obtain or keep in mind the information placed before him for his guidance, and such failure contributed directly to the accident and his death, there could be no escape from the conclusion that he was guilty of contributory negligence.

It must, therefore, be assumed that he knew that the lemon train was probably approaching him on the same track, on a

down grade, and that he also knew that the motorman thereof was in ignorance as to the fact that the work train was anywhere in the neighborhood. With this knowledge he chose to assume the risk, and carried his train into and through a fog so dense that he could not see at most more than two hundred feet, without taking any precaution, either by ringing the gong on his car or by complying with the instructions to send a man to flag the approaching train. Had the train been stopped when the dense fog was reached and a flagman been sent out, there can be no question that the collision would have been averted. The situation was clearly such as to require the deceased to take every possible precaution against a collision with the train that he must be held to have known was approaching him on the same track, the operatives of which train, he further must be held to have known, were ignorant of his whereabouts, and were relying upon him to keep out of their way.

It cannot be doubted that it is negligence for an engineer or motorman, charged as he is with the duty of caring for the safety of his train, to operate it with entire disregard of a known danger, or of a danger of which he must have known if he had used the care required of him in the discharge of the duty confided to him. When in the face of such a danger he proceeds without observing practicable instructions given him by his employer designed to guard against the same, the observance of which would clearly have the effect to avoid the danger, there can be no difference of opinion in the minds of reasonable men as to the character of his conduct. It is negligence *per se,* and if such negligence directly contributes to his own death, as it unfortunately did in this case, it must be held to be a complete defense to any action for damages brought by his heirs or legal representatives against the employer on account of his death.

In this case the undisputed facts shown by plaintiffs' witnesses were such as to make the question of the negligence of the deceased one of law for the court. But one inference could be drawn therefrom by reasonable men, viz.: that the deceased was himself guilty of negligence contributing directly to the collision and his consequent death. Under these circumstances, the motion for a nonsuit should have been granted.

If the evidence subsequently introduced by defendant be considered, it shows that plaintiffs' case was made no stronger thereby. That evidence but emphasized the facts shown by plaintiffs' case, namely, that deceased was in sole charge of the work train and responsible for its safety, and that he had full knowledge of the practice as to the lemon train, and also showed that he had many times within a few weeks of the accident acted as motorman on the lemon train.

In view of our conclusion as to the question discussed, it is unnecessary to consider the contention of defendant to the effect that the court erred in the matter of instructions to the jury.

The judgment is reversed and the cause remanded for further proceedings.

Shaw, J., and Van Dyke, J., concurred.