[Civ. No. 285.   Third Appellate District.—June 26, 1907.]

## HOWARD DENNIS, Respondent, v. CROCKER-HUFFMAN LAND AND WATER COMPANY (a Corporation), Appellant.

NEGLIGENCE—FAILURE TO CONTROL CANAL AND HEADGATE—DAMAGE TO CROPS AND LAND—SUFFICIENCY OF COMPLAINT—CERTAINTY.—A complaint for damages for destruction of plaintiff's crops, and injury to his land, which alleges that the water in defendant's canal washed out the headgate thereon, and portions of the banks of the canal, and flowed therefrom over plaintiff's land, carrying away a large quantity of plaintiff's soil to his damage in the sum of $350, and over and through his crop, to the destruction thereof to his damage in the sum of $1,200, and that said loss and damage was caused through the gross negligence of the defendant in failing properly to construct said canal or ditch and said headgate, and in failing to properly maintain, care for and control said headgate, and to care for, manage and control the water in said canal, states a cause of action with sufficient certainty to notify defendant of the facts he is required to answer.

ID.—RATIONALE OF RULE REQUIRING CERTAINTY—UNCERTAINTY MUST CAUSE SUBSTANTIAL INJURY—CURE OF ERROR BY DENIAL.—The rationale of the rule requiring certainty in pleading is that the opposing party may know the facts upon which plaintiff relies, and which defendant may meet by denial or avoidance.  To justify a reversal of the judgment, error in overruling a demurrer to the complaint for uncertainty must have resulted in substantial injury to the defendant.  Error in this respect is cured by a full and complete denial in the answer.

ID.—STATEMENT—SETTLEMENT—ORDER EXTENDING TIME—INADVERTENCE OF NONRESIDENT JUDGE.—Where, after a motion for a new trial had been made on the minutes of the court, and was denied by the judge who tried the case, and who resided in another county, appellant's attorney sent to him an order extending time to prepare and serve a statement of the case, which was signed by the judge on the following day, and if immediately returned would have been filed in time, but through inadvertence of the judge it was delayed, so that it was not received till after the lapse of the ten days, the judge properly exercised his discretion to settle the proposed statement, and the appellant, who could not exercise any control over the action of the judge, was not required to apply for relief on the ground of his own mistake, accident, surprise, inadvertence or excusable neglect.

ID.—FILING OF ORDER EXTENDING TIME.—It seems that the statute does not in terms require an order extending the time in which to serve a statement to be filed, though it is not held that the filing of the order should not be made.

ID.—DESTRUCTION OF CROPS—ADMISSIBILITY OF EVIDENCE.—On the issue as to the destruction of plaintiff's crops, evidence was admissible to show what crops the land was capable of producing, the kind of crops destroyed, the average yield per acre of each kind on the land not destroyed, and on other similar lands in the immediate neighborhood, cultivated in like manner, the stage of growth of the crops at the time of the destruction, the expense of cultivating, harvesting and marketing the crops, the market value thereof at maturity, or within a reasonable time after the injury.

ID.—EVIDENCE CONSIDERED BY JURY—MEASURE OF DAMAGES.—While such admissible evidence may be considered by the jury in determining the amount of the damages, yet the true measure of compensation is the value of the crops in the condition they were in' at the time of their injury or destruction.

ID.—ADAPTATION OF LAND TO SPECIAL CROP—HABIT AS TO CROP—ADMISSIBILITY—WEIGHT.—Evidence was admissible to show that plaintiff's land was peculiarly adapted to sweet potatoes, and that it had been planted in sweet potatoes several years before the loss occurred, and an objection to the latter evidence that it was too remote goes to the weight of the evidence, and not to its admissibility.

APPEAL from a judgment of the Superior Court of Merced County.   Geo. E. Church, Judge presiding.

The facts are stated in the opinion of the court.

Frank H. Farrar, and James F. Peck, for Appellant.

J. K. Law, and H. S. Shaffer, for Respondent.

HART, J.—This is an action for damages claimed to have been sustained by plaintiff by the destruction, through the alleged negligence of the defendant, of certain crops of sweet potatoes and beans while the same were under cultivation and growing on the land of the respondent and also for alleged injury to said land.   It is alleged that the plaintiff, after all the necessary preparations therefor, in the year 1903, planted ten acres of his land, situated in Merced county, in sweet potatoes and three acres thereof in beans; that "said crops grew well and were cultivated, tilled, irrigated and cared for by plaintiff at great expense and were in fine grow-

ing condition and in high state of cultivation, and of great
value until the damage thereto and destruction thereof caused
by defendants as herein alleged, and would but for said dam-
ages and destruction have produced large and valuable crops
of beans and sweet potatoes.'' The defendant is a corpora-
tion, created, organized and existing and operating its busi-
ness under the laws of the state of California, and it is aver-
red that it is and was, at and before the time at which this
action was brought, the owner of and maintained, operated and
controlled, in the said county of Merced, in close proximity
to the said land of plaintiff, a ''canal or ditch into which and
through and by means of which water has been conducted, col-
lected, flowed and carried, and furnished to farmers and others
by defendant, and in conjunction and connection with said
canal or ditch defendant has during all of said times, owned,
operated, maintained and controlled, at a place thereon near
plaintiff's said land, a headgate constructed and used to con-
trol and regulate the flow of water in and through said canal
or ditch.'' It is alleged that, in the month of July, 1903,
and while the crops of potatoes and beans mentioned were
growing on said land of plaintiff, the water in said canal
washed out said headgate and portions of the banks of the
canal and flowed therefrom upon and over the said land and
through and over the said crops of plaintiff, washing out and
carrying away a large quantity of said land and the soil there-
of, and damaging and destroying the said crops growing
thereon. It is alleged that the damage to and destruction of
plaintiff's said property in the manner and by the means
thus charged was through ''the gross and willful negligence
of the defendant in failing to properly construct said canal
or ditch and said headgate, and its gross and willful negligence
in failing to properly maintain, care for and control said
headgate, and to care for, manage and control the water in
said canal.'' The specific damages alleged to have been there-
by suffered by the plaintiff are: 1. Because of the washing
out and carrying away of a certain part of the land and soil
thereof, $350. 2. For the damage to and destruction of the
growing crop, $1,200, the total amount being $1,550, for
which sum the plaintiff prayed for judgment. A general
and special demurrer to the complaint was overruled by the
court. The answer makes general and specific denial (the
complaint was verified) of all the material averments of the

complaint. The cause was tried by a jury, and a verdict returned for the plaintiff for the sum of $500, and thereupon judgment entered in his favor for that amount. The appeal is from the judgment, accompanied by a statement of the case.

1. It is insisted that the court should have sustained the demurrer to the complaint on the ground of uncertainty. The particular objection to the complaint in this particular is that the allegations charging the defendant with the negligence in the management, control and operation of its ditch and the headgate thereto, and through which it is claimed the destruction of plaintiff's crops and damage to his freehold was caused, are not sufficiently direct and specific. The rationale of the rule requiring certainty in pleading is that the opposing party may be made fully cognizant of the facts upon which the plaintiff relies and which the defendant must meet by denial or in avoidance. The complaint might perhaps have been more particular and direct in its averments as to the manner in which the defendant was guilty of the negligence charged against it, yet we think its allegations are sufficient, and that by them the defendant was fully notified of the facts it was required to answer or otherwise combat, as the exigencies of its defense might demand. Moreover, the answer specifically denies all the material averments, and thus the issues involving all the important questions which could arise were fairly made and squarely presented. Therefore, even if it were conceded that the court erred in its ruling on the demurrer, the same was cured by the full and complete denials of the answer. Besides, it is not every erroneous ruling of the trial court in this regard that demands a reversal of the judgment. Substantial injury to defendant must have resulted from the action of the court. (*Holland* v. *McDade*, 125 Cal. 353, [58 Pac. 9] ; *Jager* v. *California Bridge Co.*, 104 Cal. 542, [38 Pac. 413] ; *Stephenson* v. *Denel*, 125 Cal. 656, [58 Pac. 258] ; *Williams* v. *Casebeer*, 126 Cal. 77, [58 Pac. 380] ; *Rooney* v. *Gray Bros.*, 145 Cal. 753, [79 Pac. 523] ; Code Civ. Proc., sec. 475.) The issuable facts having been tendered in such manner by the pleadings as to present for trial a clear-cut issue upon the two important questions of damage and negligence, the defendant could have suffered no injury, and as the answer and the trial clearly attest, did not suffer any injury.

2. The defendant made a motion for a new trial upon the minutes of the court, and the same was denied. No appeal was taken from the order refusing a new trial. Objection is made by counsel for the respondent to the consideration upon this appeal of the statement of the case for the alleged reason ''that the same was not served within the time allowed by law, and was received too late.'' It appears from the transcript that the motion for a new trial was denied by the court on the twenty-eighth day of December, 1905. On the fourth day of January, 1906, the defendant prepared and forwarded to Hon. George E. Church, a judge of the superior court of the county of Fresno, who presided at the trial in this cause, a blank order and application for an extension of the time within which to prepare and serve his statement to and including the twenty-ninth day of January, 1906. Said blank order was received by Judge Church on the fifth day of January, 1906, and on that day signed by him; but through inadvertence on the part of the judge the order was not forwarded to the clerk of the court in which the cause was tried until the ninth day of January, 1906, on which day the order was received by said clerk and thereupon filed with the other papers as a part of the record of the case. It will thus be observed that, while the order extending the time was signed by the judge before the expiration of the time within which, under the statute, the statement may be proposed and served, it did not become a matter of record until two days after the lapse of that time. It is contended by the respondent that, because the statement was not served within the ten days allowed by the express mandate of the statute, the judge lost jurisdiction to settle and allow the same, and that appellant should, in order to have been relieved of the default, have made application for such relief under section 473 of the Code of Civil Procedure, upon the ground of ''mistake, inadvertence, surprise or excusable neglect.'' Several cases are called to our attention which, it is claimed, support the contention of respondent. But the cases cited, upon the facts, are not precisely in point, nor have we been directed to any cases where exactly the same state of facts marks the proceedings involving the proposal, service, settlement and allowance of the statement. In *Vinson* v. *Los Angeles Pac. R. R. Co.,* 147 Cal. 483, [82 Pac. 53], where the defendant failed altogether

to propose and serve the statement within the statutory time, and the court, upon a showing of excusable neglect, relieved him of his default by granting him further time within which to propose and serve such statement, the supreme court, speaking through Mr. Justice Angellotti, *inter alia,* says: "Whether or not the circumstances of a particular case are such that the mistake or inadvertence should be excused is a question the determination of which must, of necessity, be left largely to the court to which application is made, and it is well settled that this Court will not interfere with the exercise of the discretion of that tribunal, except in a case where a clear abuse of discretion is apparent. Particularly is this so where the discretion is exercised in favor of the granting of the relief sought, as such action tends to bring about a conclusion on the merits, which is always to be desired." (Citing *O'Brien* v. *Leach,* 139 Cal. 220, [96 Am. St. Rep. 105, 72 Pac. 1004].)

In the case at bar it is patent that the failure to file the order extending the time with the clerk of the court before the expiration of the time for the proposal and service of the statement expressly prescribed by the statute (Code Civ. Proc., sec. 661) was not due to negligence on the part of the appellant or his counsel. Application for the extension was made and the order signed by the judge in ample time for the filing of the same before the lapse of the statutory period of ten days. The fact, of which we are authorized to take judicial notice, that the judge who tried the case and to whom application was made for the extension of time, resides in another and different county and a considerable distance from that in which the action was tried, and the further fact appearing in the record that he was at the time of such application at his own home, should also be considered in determining whether there was an abuse of discretion in the settlement and allowance of the statement. The statute in terms does not require an order extending the time within which to propose and serve a statement of the case to be filed, and while we do not hold that the filing of such an order should not be made, we feel justified in declaring that, under all the circumstances shown by the record upon this point, there was no abuse of discretion by the judge in the settlement and allowance of the statement, but that under the principles announced in *Vinson* v. *Los Angeles Pac. R. R. Co.,*

147 Cal. 483, [82 Pac. 53], it was properly settled and allowed. Besides, we cannot see how the appellant could have based an application for "relief," if the circumstances with reference to the proposal and service of the statement show that "relief" of any kind was necessary, upon "accident, surprise, inadvertence or excusable neglect" upon his part, in view of the fact that the delay in filing the order was imputable to the oversight or inadvertence of the judge himself. Without attempting to decide what would be the proper legal course in such a case, it may be suggested that it would, indeed, be rather a severe rule which would prevent a litigant from exhausting every means made available to him by the law for a full and final determination of questions involving what are at least claimed to be his rights through a circumstance over which it is impossible for him to exercise the least control. There are some other technical objections to the consideration of the statement which we think need not be noticed.

3. According to the evidence the banks of the defendant's ditch broke opposite the land of plaintiff and flooded all said land, except a small piece in the southwest corner of the lot, and embracing about one-half of an acre planted in sweet potatoes. The land had been irrigated twice and cultivated the same number of times. The plaintiff testified that "there was a good average stand of potatoes" growing on the land at the time it was flooded. The plaintiff harvested the potatoes growing on the small portion untouched and uninjured by the water, and also gathered a few potatoes from that part of the land inundated. After gathering the potatoes he mingled them together—that is, he placed the potatoes from the unflooded land with those gathered from the flooded portion, so that it was impossible for him when testifying to definitely state which part of the forty-four crates he succeeded in harvesting was from the land not injured by the water and which part was gathered from the land thus injured. Plaintiff testified, however, that there were about three times as many potatoes to the hill grown upon and harvested from the land not flooded than were taken from the flooded land, and that they were much larger than those taken from the flooded portion. It is contended by the appellant that it was the duty of respondent to have kept the potatoes harvested from the flooded and unflooded portions,

respectively, in separate and distinct lots, because approximately the exact quantity and quality of the damaged potatoes could then have been determined by the quantity and quality of the potatoes not damaged. It is argued that in thus mingling the potatoes, respondent destroyed the best and most accurate evidence which could have been offered upon the questions of quantity and quality, and therefore, should not have been permitted by the court to introduce evidence as to the quantity or extent of the harvest upon adjoining lands for the purpose of establishing the probable yield upon his land had the same been unimpaired or uninjured by the overflow water from the ditch. The contention is without substantial merit. The fractional portion of the land undisturbed by the overflow waters from the ditch is not, according to the testimony, as well adapted to sweet potato culture as the other or flooded portions, because the latter is lower in altitude and possesses a sandy soil peculiarly suitable for the growing of such crops. Therefore, to take the crop gathered from the higher land, not so productive as the other, as the criterion, would, of course, have been unfair and unjust. Besides, the testimony shows that the plaintiff, after the water had receded and disappeared from the land harvested about two and a half acres of the potatoes, the least damaged by the water, on the flooded land, and that a comparison in quantity and quality of the potatoes harvested on the two portions of the land—the part flooded and the part not flooded—showed that those from the latter portion were, as before stated, larger in size and more extensive in quantity. Other witnesses—farmers growing sweet potatoes on land in the neighborhood of the plaintiff's land, and which land is similarly situated and of the same character of soil and cultivated under the same conditions, were permitted to give testimony, without objection, as to the number of sacks of potatoes grown on their lands the year in which the damage here complained of was sustained, and also as to the average weight of the sacks. This testimony was competent and relevant, because it tended to show what, under ordinary circumstances, would have been, in all probability, the yield of the crop but for the damage sustained by the overflow of the water from the ditch.

4. It is claimed that the court erred in admitting testimony as to the market value of sweet potatoes raised in the neigh-

6 Cal. App.—5

borhood of the plaintiff's land in the year in which the alleged damage was suffered. This testimony was, of course, directed to the question of the ascertainment of the value of the growing crop at the time of its alleged destruction. In the recent case of *Teller* v. *Bay and River Dredging Co.*, 151 Cal. 209, [90 Pac. 942], the supreme court declares that the true rule upon the point under consideration, as well as upon the character of the evidence generally which is admissible for the purpose of determining the amount of compensation which should be awarded in cases like the one at bar, is stated in the case of *Lester* v. *Highland Boy Gold Min. Co.*, 27 Utah, 470, [101 Am. St. Rep. 988, 76 Pac. 341], as follows: "In cases of destruction of growing crops it is proper and important to introduce and admit evidence showing the kind of crops the land is capable of producing, the kind of crops destroyed, the average yield per acre of each kind on the land not destroyed and other similar lands in the immediate neighborhood, cultivated in like manner, the stage of the growth of the crops, at the time of injury or destruction, the expense of cultivating, harvesting and marketing the crops, and the market value at the time of maturity, or within a reasonable time after the injury or destruction of the crops, and while all such evidence may be considered by the jury in determining the amount of damages, if any, still the true measure of compensation is the value of the crops in the condition they were in at the time of their injury or destruction." And the rule is so declared in *Teller* v. *Bay and River Dredging Co.*, 2 Cal. App. Dec. 224, *Shoemaker* v. *Ackert*, 116 Cal. 239, [48 Pac. 62], and *Ellis* v. *Tone*, 58 Cal. 289. The rule as thus enunciated answers many other objections urged by the appellant against the record in the case at bar, both as to evidence admitted and instructions given and refused by the court.

5. Evidence was offered and received for the purpose of showing that the land of respondent was peculiarly adapted to the cultivation of sweet potatoes. The appellant, in his answer, denies that the land in question ever produced at any time "any crops or crop of beans or sweet potatoes of any value whatever." The witness James was allowed to testify that, several years previously to the year in which the alleged damage occurred, he had planted a portion of said land in sweet potatoes and had harvested therefrom seventy

or eighty sacks to the acre. It is objected that this testimony related to a time too remote from that at which the alleged injury was inflicted to render it admissible in any view. The objection goes rather to the weight than to the competency and relevancy of the evidence. We think it was clearly proper as showing or tending to show that the soil of the land was of a nature which rendered it peculiarly suitable for the cultivation of potatoes, and for that purpose the land had special value. The fact that the land was profitably used for potato growing five or six or eight years previously to the year in which the damage was done bore directly upon its value for such purpose at the time of the injury or destruction.

Errors are assigned in the giving and the rejection of certain instructions by the court. We have examined with solicitous care the instructions presented to the jury by the court, and are of the opinion that the law upon all the vital points involved was fully and clearly declared.

We do not regard it necessary to notice all the points urged here involving criticism of the rulings of the court in the admission and rejection of evidence. It is sufficient to say that we have given the record careful consideration, and are convinced that it discloses no errors prejudicial to the defendant. The case seems to have been carefully and fairly tried, and the judgment is, in our opinion, just and should not be disturbed.

The judgment is, therefore, affirmed.

Burnett, J., and Chipman, P. J., concurred.