[Civ. No. 2286. Third Appellate District.—July 15, 1921.]

F. F. BRASHER, Respondent, v. E. J. WHITE, Appellant.

[1] DEFAULT—RELIEF UNDER SECTION 473, CODE OF CIVIL PROCEDURE—DISCRETION—APPEAL.—While applications for relief under section 473 of the Code of Civil Procedure, on the ground of mistake, inadvertence, surprise, or excusable neglect, are addressed to the discretion of the trial court, with which discretion, when once exercised in a case, interference by a reviewing court will not be justified except upon a satisfactory showing that it has been abused, still the provisions of the section, like all others of the code, are to be liberally construed with a view to effect its objects and to promote justice.

[2] ID.—REFUSAL TO SET ASIDE DEFAULT—ABUSE OF DISCRETION.—Refusal to set aside a default for failure to demur or answer a com-

plaint within legal time is an abuse of discretion, where it is shown by uncontroverted affidavits that the defendant erroneously stated to his attorney the date upon which he was served with summons, and within three days after receipt of information that the default had been entered, he applied for relief and showed that he not only had a meritorious defense, but was entitled to affirmative relief.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Reversed.

The facts are stated in the opinion of the court.

C. A. Pinkham for Appellant.

David Cosgrave for Respondent.

HART, J.—The defendant having failed to answer or demur to the plaintiff's complaint herein within due legal time, a default therefor and thereupon a judgment were entered against him.

It appears that the default of the defendant for his failure to answer or demur to the complaint and judgment upon such default were entered against him upon the thirteenth day of September, 1920; that the defendant first received information of the default and the judgment having been entered on the twenty-fourth day of September, 1920, and that, on the twenty-seventh day of September, 1920—three days after the receipt of notice of said default—upon the authority of section 473 of the Code of Civil Procedure, he filed and served upon the plaintiff a notice that he would, on the eleventh day of October, 1920, move the court for an order setting aside said default and said judgment. The motion was heard, being supported by affidavits and the records and files of the case, and the same was denied.

This appeal the defendant prosecutes from the order denying said motion.

The action was brought by plaintiff by an unverified complaint to recover the sum of $1,180.92, being the balance alleged to be due him on account of services performed and moneys paid out by him to meet the current expenses in managing as superintendent the ranch of defendant in San Joaquin County, which services and moneys were so performed and disbursed "at the special instance and re-

quest'' of the defendant. The complaint also counts on two other distinct claims against the defendant which, it is alleged, were assigned to the plaintiff by the respective owners thereof prior to the commencement of the action.

The affidavits filed with the motion to open the default were by the defendant and his attorney, Chester A. Pinkham, and the facts as stated therein are not controverted by the plaintiff.

The affidavit of defendant is, in substance, as follows: That at the time of the commencement of this action and ever since said time he has resided in the city and county of San Francisco and that at no time did he ever reside in the county of San Joaquin; that the plaintiff in said action well knew, at the time of the commencement of said action, that defendant was a resident of said city and county; that in the month of August, 1920, the summons and the copy of the complaint in this action were served upon this defendant in the city and county of San Francisco, and that "within two or three days" after such service, and on or before the nineteenth day of August, 1920, he took the copy of the summons and complaint so served upon him to his attorney, Mr. Chester A. Pinkham, at his office, which was located in said city; that at that time defendant retained said Pinkham as his attorney and instructed him to appear for him in this action and to answer the complaint herein and to make such motions in the action as he might deem proper; that he delivered to said Pinkham a copy of said summons and complaint, and "believed that he had informed his said attorney that the same were served on the seventh day of August, 1920, but that he is now informed that his said attorney inadvertently and mistakenly supposed and believed that this defendant stated to him that the date of service was on the seventeenth day of August, 1920, and that his said attorney by reason of inadvertence and mistake misunderstood this defendant and believed and understood that the said summons and complaint had been served upon this defendant on the seventeenth day of August, 1920, instead of on the seventh day of August, 1920; that this defendant's said attorney undertook and agreed to appear for said defendant in said action within the time allowed by law therefor; that thereafter and on sundry occasions between the nineteenth day of August, 1920, and

the fourteenth day of September, 1920, the said Chester A. Pinkham informed this defendant that he had until the sixteenth day of September, 1920, within which to plead or appear in said action, and that he would see that the proper papers and pleadings were prepared and filed in due and sufficient time, and that this defendant relied upon said promises and undertaking of his said attorney, and because of the advice and statements of his said attorney this defendant at all times believed that he had until the sixteenth day of September, 1920, within which to plead or appear in said action; that this defendant at all times desired and intended to contest the plaintiff's cause of action; that this defendant at the time of employing said Chester A. Pinkham as his attorney to defend said action fully and truly and fairly stated to said Chester A. Pinkham all the facts pertaining or relating to said action, or to this affiant's defense thereto, and that this defendant was then informed by his said attorney . . . that he had a good and meritorious defense to said action, and that this defendant has been advised by his said attorney, and he verily believes and now states, that he has a good and sufficient defense to said action on the merits.'' The defendant further deposes that he believed and understood at all times that his attorney would appear in said action at the proper time and plead to the complaint therein and would do all things necessary and proper for the purpose of pleading to the complaint in said action within the time allowed to this defendant by law therefor; that prior to the fourteenth day of September, 1920, his said attorney prepared on behalf of the defendant the following papers in said action, to wit: A demurrer of this defendant to the complaint in said action; a demand upon the plaintiff in said action for a bill of particulars; a notice of motion for change of place of trial of said action; an affidavit as to the residence of this defendant; an affidavit of merits, and a demand for change of place of trial of said action. That each of said papers was on the fourteenth day of September, 1920, subscribed to by deponent and the affidavits were sworn to before a notary public in said city and county of San Francisco and each and all of said documents delivered to the said attorney for the defendant; that on the same day the said attorney signed each of the documents

or papers just named as the attorney for defendant and
mailed the same to the clerk of the county of San Joaquin,
in which county the action was instituted, together with the
sum of five dollars as the clerk's fee for filing the same;
that each and all of said papers were received by said
county clerk and filed in his office in this action on the
sixteenth day of September, 1920; that the attorney for the
plaintiff, Samuel K. King, was, at the time of the com-
mencement of the action, and at all times mentioned in the
affidavit, a resident of and maintained and had his office at
Escalon, in the said county of San Joaquin; that on said
fifteenth day of September, 1920, a full, true, and correct
copy of each and all of the aforesaid documents and
papers was mailed in the city and county of San Francisco
to the said Samuel K. King by inclosing the same in a
sealed envelope addressed to the said King at his office in
the said town of Escalon and by depositing the same so
inclosed in said sealed envelope addressed as aforesaid, with
the postage thereon fully prepaid, in the United States post-
office in said city and county of San Francisco; that on the
sixteenth day of September, 1920, "the said clerk of the
county of San Joaquin wrote to the said attorney for this
defendant in San Francisco, and acknowledged receipt of
said clerk's fee of five dollars and informed this defendant's
said attorney that the said demurrer and other papers had
been filed in said action on said sixteenth day of September,
1920, and did not mention or state that any default had
been entered in said action against said defendant; that
thereafter, and on the twenty-first day of September, 1920,
this defendant, by and through his said attorney, sent to
the said county clerk two dollars as and for the calendar
fee in said action for placing the said demurrer of this
defendant upon the calendar of said court for hearing; that
on the twenty-third day of September, 1920, the said county
clerk wrote to the said attorney for the defendant acknowl-
edging the receipt of said calendar fee and stating that a
default had been filed and entered on September 13, 1920,
in said action, and that a judgment had been entered upon
said default; that the said letter of said county clerk was
not received by said attorney for said defendant until the
twenty-fourth day of September, 1920; that neither the de-
fendant nor his said attorney had any notice, information,

or knowledge concerning said default or the entry of any judgment thereon until said letter from said county clerk was received by said attorney for this defendant on said twenty-fourth day of September, 1920; that immediately upon receiving the same the said attorney for this defendant wrote to this defendant and notified him of the fact that a default had been entered in said action and that said notice was not received by this defendant until to-day, and not until this date did the defendant have any knowledge or information concerning the said default; that at all times up to the present time this defendant verily believed that his said attorney had appeared and pleaded in said action within the time allowed by law therefor and that neither this defendant nor his said attorney knew or had any reason to believe that any default had been entered in said action until the said letter from said county clerk was received by said attorney for this defendant on the twenty-fourth day of September, 1920.'' The defendant further deposes that the demurrer and the motion for a change of place of trial of this action were made and filed in good faith; that, ''without waiving his said demurrer to the said complaint, and without prejudice to said demurrer, this defendant by and through his said attorney, has prepared his answer to the said complaint in said action, and his cross-complaint against the said plaintiff in said action, and that a copy of the said answer and cross-complaint of this defendant is attached hereto, and is hereby referred to and made part hereof; and that this defendant proposes to file the said answer and cross-complaint in said action; that the said default of this defendant in said action, and the said judgment by default taken against this defendant in said action, were entered and taken against him through his mistake, inadvertence or excusable neglect.''

The attorney for defendant, in his affidavit, states that the defendant called upon affiant at his office in the city and county of San Francisco and delivered to him a copy of the summons and complaint in this action and then and there stated to affiant that the said summons and copy of said complaint had been served on him (defendant) in the city and county of San Francisco; that this affiant thereupon asked said defendant the date of said service, and that this affiant understood the said defendant to reply that the said

papers had been served upon him on the seventeenth day of August, 1920, "and thereupon this affiant immediately made a memorandum upon the back of said copy of said summons which reads as follows: 'Served on White in S. F. Aug. 17/20,' and made in his office register of the proceedings in the above-entitled action the following entry, to wit: 'Aug. 17 1920, Summons and Complaint served on Defendant in S. F.'; that the said notation and entry were made by this affiant because this affiant understood the said defendant to say that the 17th of August was the date upon which said summons and complaint were served upon him, but this affiant is now for the first time informed by said defendant that the said defendant said the '7th and not the 17th,' but this affiant at all times from and including the date on which the said copy of said summons and complaint were delivered by said defendant to this affiant, and from and including the nineteenth day of August, 1920, verily believed and understood that the date on which the said summons and complaint were served upon the said defendant was the seventeenth day of August, 1920; that at no time prior to the twenty-fourth day of September, 1920, did this affiant have any information, notice, knowledge, or understanding which would lead him to believe, or which did lead him to believe or suspect, that he was mistaken in understanding that the said summons and complaint had been served upon said defendant on the seventeenth day of August, 1920; . . . that until September 24, 1920, this affiant never had any reason to believe or suspect that he had misunderstood said defendant, or that the entry made in his office register or indorsed on said copy of said summons, was erroneous."

The attorney further deposes that, in pursuance of instructions from the defendant given on the said nineteenth day of August, 1920, to prepare the necessary papers for an appearance in said action, he did thereafter, and between the tenth and fourteenth days of September, 1920, prepare on behalf of said defendant the demurrer and other papers above mentioned; that laboring under the honest belief, based upon his misunderstanding of the defendant in stating to him the day upon which the summons and copy of complaint were served, that he still had time within which to file said papers and appear in said action on behalf

of defendant, he mailed each and all of said aforesaid papers, properly subscribed and sworn to on the fifteenth day of September, 1920, to the clerk of the superior court of the county of San Joaquin, to wit, the county clerk of said county, and served by mail a copy of each and all of said papers upon attorney for plaintiff in said action; "and that a full, true, and correct copy of each and all of said papers was actually received in Escalon, San Joaquin County, California, by the plaintiff's attorney on the sixteenth day of September, 1920, and that each and all of said original papers were actually filed in the above-entitled action and in said court on said sixteenth day of September, 1920, and that each and all of said papers are now on file in said court in said action, and are hereby referred to and made a part hereof." The attorney's affidavit then proceeds with a statement of facts corroborative of the statement of defendant in his affidavit as to the sending of the two dollars calendar fee for placing the demurrer on the calendar of the court for hearing and the receipt of a letter by him thereafter from the county clerk of San Joaquin County stating that a default had been entered in said action on September 13, 1920, against the defendant and that a judgment had on said day been entered upon said default. The attorney also deposes that the said defendant at all times relied upon him to make the appropriate appearance in this action . . . ; "that because of said mistake and inadvertence of this affiant he believed that the sixteenth day of September, 1920, was within thirty days from the date of such service, and that he acted accordingly, and informed and advised the said defendant that the said papers would be served and filed within the time allowed by law therefor; and that the said judgment in the above-entitled action was taken within said date through his mistake, inadventence, surprise, or excusable neglect."

The answer (unverified) proffered by the defendant and which, with an unverified cross-complaint likewise proffered, was filed with the papers and affidavits on the motion to set aside the default, specifically denied each and every material allegation of the complaint, except the allegation that defendant had, during the period referred to in the complaint, paid the plaintiff the sum of $2,557.46, which said sum, so the answer stated, was in full payment of any and all

indebtedness of the defendant to plaintiff, and except also that, as to one of the claims alleged in the complaint to have been assigned by the owner thereof to plaintiff, of which it is said in the answer that full satisfaction thereof was made by defendant prior to the commencement of plaintiff's action.

The cross-complaint referred to above alleges that, upon the representations of plaintiff that he was a farming engineer and skilled in agricultural and horticultural pursuits, and in all matters pertaining to the planting and cultivation of fruit trees, and relying upon the representations so made, the defendant entered into an agreement with plaintiff, whereby the latter agreed, for a certain specified consideration, to furnish, set out, and plant upon the ranch of defendant, in San Joaquin County, white Adriatic fig trees and such other trees and vines as the defendant might desire, and that he would skillfully and properly cultivate and irrigate the same for one year. It is then charged, with considerable detail, that the plaintiff negligently failed to cultivate properly said ranch for the purposes stated and that, although there was conveniently available for the proper irrigation of the trees, which the cross-complaint states that plaintiff did plant on said ranch, an ample supply of water, the plaintiff negligently failed to irrigate said trees or any of them properly; that by reason of such failure and neglect on the part of plaintiff in the carrying out of his part of said agreement, the defendant was damaged in the sum of five thousand dollars, for which, by way of affirmative relief, defendant prayed judgment as against the plaintiff.

The defendant, after the motion was partly heard, filed, by leave of the court, a supplementary affidavit, correcting his original affidavit in the following particular: That, in his former affidavit, he deposed that he delivered the summons and copy of the complaint to his attorney "two or three days after said summons and complaint had been served," whereas he should have deposed and intended to depose that he gave the documents named over to his attorney "within a few days after" the service thereof upon him. This inaccuracy, he further stated in his supplementary affidavit, was due to the fact that he was greatly harassed by business reverses and financial losses and diffi-

culties, "and was sick and under great mental strain and threatened with a nervous breakdown," and as a consequence was unable properly to attend to his business or personal affairs. He, however, stated therein that, notwithstanding his mental and physical condition as so described, he did deliver the summons and copy of the complaint to his attorney on the nineteenth day of August, 1920.

Thus there has been presented a *résumé* of the showing made by the defendant on his motion for an order opening up the default entered against him. To that showing there was not, as before stated, a counter-showing made or attempted. The plaintiff, though, did file an affidavit, but therein he did not deny or controvert or make any attempt at or pretense of denying or controverting the facts set out in the affidavits filed by the defendant. Said affidavit amounted only to this: 1. An attempted impeachment of the statement contained in the defendant's later affidavit as to his mental and physical condition at the time the summons and the copy of the complaint were served upon him; 2. The negativing of the defendant's claim, as set forth in his proposed answer to the complaint, that one of the assigned claims counted on in the complaint had been fully satisfied before plaintiff commenced his action; 3. Reaffirming the validity of another of the assigned claims alleged in the complaint; and 4. Justification for the alleged cutting down, destruction of, and carrying away from defendant's ranch and converting to his own use certain live-oak trees and timber growing on said ranch, without accounting to defendant therefor, as set out in detail in the cross-complaint as a part of the second cause of action for affirmative relief to defendant.

It is plainly manifest that the statements embraced in the affidavit of the plaintiff are wholly without relevancy to the issue before the court in this proceeding. They do not bear upon the question at issue, to wit: Whether the defendant's failure to appear in the action in legal time was or was not excusable. Indeed, the affidavit, in the latter part thereof, contained averments which are addressed to the merits of the action, and in effect constituted an attempt to try the merits of the controversy as it is stated in the complaint in this proceeding by way of affidavits. The rule that the merits of the action cannot thus be tried is

not only sound in principle, but has been time and again affirmed and reaffirmed by the cases. (See *Francis* v. *Cox,* 33 Cal. 323; *Gracier* v. *Weir,* 45 Cal. 53; *Douglas* v. *Todd,* 96 Cal. 655, [31 Am. St. Rep. 247, 31 Pac. 623]; *Rauer's Law & Collection Co.* v. *Gilleran,* 138 Cal. 352, [71 Pac. 445].)

That the affidavit of merits made by the defendant is sufficient in form as well as in the statement of facts, there can be no doubt. The affidavit, it will be noted, declares that defendant "fully and truly and fairly stated to said Chester A. Pinkham [his attorney] all the facts pertaining or relating to said action, or to this affiant's defense thereto, and that this defendant was then informed by his said attorney . . . that he had a good and meritorious defense to said action, and that this affiant has been advised by his said attorney, and he verily believes and now states, that he has a good and sufficient defense to said action on the merits." The statement that affiant (defendant) has stated to his attorney "all the facts pertaining or relating to said action" is the equivalent of the statement that he has so stated "all the facts of the case" to his attorney. The term "action," as used in the affidavit, means the "cause of action" stated in the complaint, and the phrase "cause of action," in law, is generally understood as meaning the whole cause of action —that is, every fact which is material to be proved to entitle the plaintiff to succeed and which the defendant would have the right to traverse. (1 Cyc. 641; *Cooke* v. *Gill,* L. R. 8 C. P. 107). In *La Rocque* v. *Conhaim,* 45 Misc. Rep. 234, [92 N. Y. Supp. 99], the affidavit of merits read: "Deponent has fully and fairly stated his defense to said 'action' and all the facts relative 'thereto' to his counsel." The court held that the word "thereto" referred to the word "action" and that the word "action" is in law synonymous with the word "case"; hence, so the court proceeded, the clause should read: "and all the facts relative to the action, i. e., 'case.'" (See, also, *Hughes Mfg. & L. Co.* v. *Elliott,* 167 Cal. 494, 500, [140 Pac. 17]; *Carter* v. *Broder,* 50 Cal. App. 63, [194 Pac. 527].)

The single question here, then, is: Did the court below remain within the bounds of a reasonable judicial discretion or did it transcend such bounds in its order denying the defendant relief upon the showing made? A painstaking con-

sideration of the record has persuaded us to the conclusion that the court below, upon the uncontroverted showing made by the defendant, should have relieved him from the serious consequences which would necessarily follow from the default entered against him should it be permitted to stand.

[1] While applications for relief, under section 473 of the Code of Civil Procedure, on the ground of mistake, inadvertence, surprise, or excusable neglect, are addressed to the discretion of the trial court, with which discretion, when once exercised in a case, interference by a reviewing court will not be justified except upon a satisfactory showing that it has been abused, still the provisions of the section, like all others of the code, are to be "liberally construed with a view to effect its objects and to promote justice." (Code Civ. Proc., sec. 4.) The particular provision of said section upon the authority of which the defendant asks for relief is of a remedial nature and the design of the entire section was to enable the courts to call into requisition their equitable powers in this respect and thus authorize them, where it is manifest that it is only in furtherance of justice to do so, to relieve against an honestly made mistake or an inadvertence or excusable neglect.

From the very earliest history of the jurisprudence of California to the present time it has been held that the power vested by section 473 in the *nisi prius* courts should be freely and liberally exercised by- said courts to the end that they might "mold and direct their proceedings so as to dispose of cases upon their substantial merits, and without unreasonable delay, regarding mere technicalities as obstacles to be avoided, rather than as principles to which effect is to be given in derogation of substantial right." (*Roland* v. *Kreyenhagen,* 18 Cal. 455.)

The case of *Reidy* v. *Scott,* 53 Cal. 69, is as to the facts quite similar to the present case. There the defendant was served with process in Merced County, where the suit was pending, on April 25th, and delivered the papers to his attorneys in San Jose a few days thereafter and erroneously stated to them that the service was on the 26th. The attorneys, acting on the information so given them, prepared an answer and sent it to Merced by express in time to reach that place on the morning of the 7th of May, which would have been ample time in which an appearance could have

been made by the defendant in the action. The answer was given to the clerk shortly after 9 o'clock on the morning of the 7th but default had just been entered and the motion by defendant to set aside the default was denied by the court, and on appeal the supreme court held that, since the affidavit of merits disclosed a meritorious defense to the action, the defendant, under the circumstances, should have been relieved of his default and reversed and remanded the cause.

In *Mitchell* v. *California etc. S. S. Co.*, 156 Cal. 576, 578, 579, [105 Pac. 590], the court, in reversing an order denying defendant's motion for relief under section 473, said: "The tendency of this court has always been to relieve parties from their defaults and mistakes, upon proper showing, to the end that matters may be heard upon the merits. Treating of this subject and particularly of the interpretation of section 473 of the Code of Civil Procedure, the following language was used by this court in *Nicoll* v. *Weldon,* 130 Cal. 667, [63 Pac. 64]: 'Section 473 . . . is a remedial provision, and is to be liberally construed so as to dispose of cases upon their substantial merits, and to give to the party claiming in good faith to have a substantial defense to the action an opportunity to present it. (*Buell* v. *Emerich,* 85 Cal. 116, [24 Pac. 644]; *Harbaugh* v. *Honey Lake etc. Water Co.,* 109 Cal. 70, [41 Pac. 792]; *Melde* v. *Reynolds,* 129 Cal. 308, [61 Pac. 932].) It is for this reason that we more readily listen to an appeal from an order refusing to set aside a default than where the motion has been granted, since in such case the defendant may be deprived of a substantial right, whereas it may be assumed, if nothing to the contrary is shown, that the plaintiff will be able at any time to establish his cause of action. If, for any reason, he will be unable to do so, that fact should be made to appear; but if he is merely subjected to delay or inconvenience by having the default set aside, he can be compensated therefor by the terms which the court would impose as a condition to granting the motion.' "

In addition to the authorities above mentioned, we cite the following upon the proposition in hand: *Vinson* v. *Los Angeles Pac. R. R. Co.,* 147 Cal. 479, 483, [82 Pac. 53]; *O'Brien* v. *Leach,* 139 Cal. 220, [96 Am. St. Rep. 105, 72 Pac. 1004]; *Watson* v. *San Francisco & Humboldt Bay*

*R. R. Co.,* 41 Cal. 17; *Grady* v. *Donahoo,* 108 Cal. 211, [41 Pac. 41]; *Jergins* v. *Schenck,* 162 Cal. 747, 748, [124 Pac. 426].

[2]  As shown there was no attempt by plaintiff at contradicting the showing made by the defendant, and we know of no just reason why, upon the record as it thus stands in this proceeding, he should not be granted the relief he has asked for. To the contrary, it seems to us, from the face of the showing made, that the denial of relief would not be in furtherance of justice. The answer and the cross-complaint proposed by defendant are attached to the defendant's affidavit of merits and are by proper reference made a part thereof, and while those pleadings are not themselves verified (for the reason, no doubt, that the complaint is not verified), they are, nevertheless, as much a part of defendant's affidavit as any other statement of facts contained therein. They themselves are a sufficient affidavit of merits—that is, they clearly show upon their face that the defendant not only has a defense to the merits of the action but is entitled to affirmative relief as against the plaintiff. Moreover, they clearly disclose the good faith of the defendant in making his application to be relieved from the default.

The fact should also be emphasized that there was no delay on the part of the defendant in applying for relief against the default, for he gave notice of his intention to apply for such relief on the twenty-seventh day of September, 1920, three days after the receipt of information by him and his attorney that the default had been entered.

Our conclusion, as previously stated, is that the learned trial court went beyond the limits of a sound judicial discretion in refusing the defendant relief in this proceeding, and the order appealed from is, therefore, reversed and the cause remanded, with directions to the court below to grant the defendant the relief asked for by him upon such terms as may be just and equitable.

Finch, P. J., and Burnett, J., concurred.