[Civ. No. 30504.   Second Dist., Div. Four.   Sept. 11, 1967.]

SIDNEY SKOLSKY, Plaintiff and Respondent, v. ELEC-
TRONOVISION PRODUCTIONS, INC., Defendant and
Respondent; MAGNA DISTRIBUTION CORPORA-
TION, Defendant and Appellant.

Kurtzman & Sarfaty and Joseph Sarfaty for Defendant and Appellant.

Harold A. Abeles, Joseph B. Copelan and Earl Warren, Jr., for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

FILES, P. J.—Plaintiff Skolsky brought an action against Electronovision Productions, Inc. on March 2, 1965, by which plaintiff sought, among other things, to recover money due him upon an alleged contract. On April 26, 1965, a writ of attachment issued and on April 27 a garnishment was levied upon De Luxe Laboratories,[1] which was holding a negative motion picture film of the photoplay "Harlow." This negative, owned by Electronovision, was in the laboratory so that positive prints could be manufactured for theatrical exhibition.

Prior to the attachment Electronovision had entered into an agreement giving Magna Distribution Corporation the right to distribute this photoplay worldwide.

Magna thereupon arranged with National Automobile and Casualty Insurance Co. to write a release of attachment bond, which was filed with the court, resulting in a release of the attachment on April 30.

On June 22, 1965, plaintiff filed a second amended complaint in which he joined Magna as an additional party defendant.

On August 30, 1965, the default of Electronovision was entered by reason of its failure to plead.

On September 2, 1965, judgment was entered in favor of plaintiff against Electronovision in the amount of $81,166.70.

The minutes of the court, as originally written at the time of the default hearing, make no mention of the other defendants. On October 25, 1965, the court made the following minute order: "It appearing to the Court that through inadvertence and clerical error the minute order of September

---

[1]The garnishee is so denominated in the marshal's return. The parties refer to the garnishee as General Film Laboratories. We assume the distinction is without significance.

2, 1965, does not properly reflect the proceedings of the Court in this matter said minute order is corrected nunc pro tunc by the addition of the following thereto:

· " 'On motion of plaintiff, and good cause appearing therefor, it is ordered that the causes of action against defendants Marshall Naify, Karl Tunberg, and Magna Distribution Corporation be dismissed pursuant to section 581(4) C.C.P.' "

On October 22, 1965, Magna made its first appearance in the action by filing a motion to set aside the judgment and the default of Electronovision, upon the ground that each was obtained "through surprise; excusable neglect on the part of defendant Magna Distribution's attorneys, and fraud of the defendant Electronovision Productions, Inc."

On December 6, 1965, the court heard Magna's motion and made the following minute order:

· "Motion denied.

· "1. Magna is not a party nor a necessary or indispensable party. It cannot even claim to be a successor in interest.

"2. There is no extrinsic fraud.

"3. There is no meritorious defense to the action, even if allowed to defend."

Magna made a motion to reconsider, supported by additional affidavits. Reconsideration was granted, but after another hearing, on January 4, 1966, the trial court adhered to its order of December 6, 1965.

Magna is here appealing from the latter two orders.

So as to have a better understanding of the unusual facts of this case we have ordered the superior court file transmitted here and made a part of the record on appeal.

We begin with the premise that Magna was dismissed from the action on September 2, 1965. This appears from the order made on October 25, correcting the minutes of September 2, *nunc pro tunc*.

This amendment, being for the purpose of correcting a clerical error, now has the same effect as though it had been written by the clerk in this form originally. (*Takekawa* v. *Hole*, 170 Cal. 323, 328 [149 P. 593].)

But the fact that Magna was not a party to the judgment does not, ipso facto, preclude Magna from moving to set aside the judgment if Magna has a sufficient interest in the subject. (*Elliott* v. *Superior Court*, 144 Cal. 501, 509 [77 P.

1109, 103 Am.St.Rep. 102]; *Gardner* v. *Trevaskis,* 158 Cal. App.2d 410, 413 [322 P.2d 545].)

In the *Elliott* case the court said (at p. 509) : "There is in fact another plain, speedy, and adequate remedy allowed by our practice to one whose rights or interests are injuriously affected by the judgment or by any appealable order of a court given or made in an action or proceeding to which he is not a party. He may make himself a party by moving to set aside such judgment or order, and if his motion is denied may, on appeal from that order, have the proceeding of which he complains reviewed not only for excess of jurisdiction but for error."

The critical question is whether Magna is "one whose rights or interests are injuriously affected by the judgment."

In *Drinkhouse* v. *Van Ness,* 202 Cal. 359 [260 P. 869], a claim and delivery action, the property in contention was seized by the sheriff, and then returned to the defendant upon his giving a redelivery bond executed by Pacific Surety Company. When the defendant became insolvent prior to judgment, Pacific Surety Company was permitted to intervene and defend the action. In approving this procedure the Supreme Court said (at p. 371) : "The interest of the Pacific Surety Company in the success of the defendant Van Ness was apparent, for the judgment, if any, to be rendered against him would fix its liability upon the redelivery bond. Upon being permitted to intervene, it became a party to the action, 'uniting with the defendant' in resisting the claims of the plaintiffs. As such party it was entitled to avail itself of all the procedure and remedies to which the defendant would be entitled for the purpose of defeating the action or resisting the claims of the plaintiffs, including the right of appeal from any judgment against the defendant."

In *Johnson* v. *Hayes Cal Builders, Inc.,* 60 Cal.2d 572 [35 Cal.Rptr. 618, 387 P.2d 394], the surety of a release of attachment bond intervened seven months after the entry of the defendant's default and moved to set it aside upon the ground it was void. The Supreme Court, citing *Drinkhouse* v. *Van Ness, supra,* held that the surety had an interest justifying intervention, though the court also concluded, after reviewing the record, that the default and the judgment were not void.

The *Drinkhouse* and *Johnson* cases establish that the surety on a release bond has standing to defend when the named

defendant refuses to do so. In the case at bench the surety on the release of attachment bond was National Automobile and Casualty Insurance Co. The moving party, Magna, obtained the bond by depositing a $50,000 letter of credit with National as security. If under the law National has sufficient interest to be allowed to assume the defense of the main action when the named defendant abandons it, Magna's interest is no less. It is Magna's money that is at risk.

The *Elliott* decision establishes that an interested nonparty may become a party by moving to vacate the judgment. The trial court was therefore in error in concluding that Magna lacked standing to make its motion.

The remaining question is whether the record entitles Magna to relief under Code of Civil Procedure section 473. We therefore examine the proceedings in the trial court which preceded the motion, and the declarations filed in connection with the motion.

The original complaint, filed March 2, 1965, was in four counts, which alleged, in various ways, that plaintiff had entered into a partly written, partly oral contract with Electronovision to sell a treatment of a proposed motion picture to be based on the life of Jean Harlow and to perform services as a writer and associate producer, for a total price of $45,000. Payment of $5,000 was acknowledged, leaving $40.000 due. The complaint also sought $100,000 damages for injuries to plaintiff's reputation and nervous system.

On April 9 plaintiff filed a first amended complaint which added a fifth count upon an implied contract to pay the reasonable value of an idea conveyed by plaintiff to defendant, which value was alleged to be $45,000, of which $5,000 had been paid. Electronovision appeared by its attorneys, Kaplan, Livingston, Goodwin & Berkowitz, and demurred to this complaint. On May 12 the demurrer was sustained by stipulation.

A second amended complaint was filed on June 22, which restated the substance of the earlier complaints and added a demand for $50,000 punitive damages.

On August 30, at the request of plaintiff, the clerk entered the default of Electronovision by reason of its failure to plead. The default judgment of September 2 followed.

On October 22 Magna filed its motion under section 473, accompanied by a proposed answer and supported by declarations. At the time the court finally ruled on the matter it had

before it the declarations of Magna's attorney (Joseph Sarfaty), Attorney Saul H. Barnett (a member of the Kaplan firm), and William Sargent, the president of Electronovision, which set forth the following explanation for the default:

On April 27, 1965, Magna learned that the film material had been attached at the laboratory. Magna had already arranged for distribution of the prints to theaters for exhibition commencing May 12. Electronovision's president, Sargent, advised Magna that plaintiff's claim was without merit and that Electronovision would defend the action through its attorneys, Kaplan, Livingston, Goodwin & Berkowitz. Magna thereupon agreed to give security to National Automobile and Casualty Insurance Co. to obtain a release of attachment bond.

On June 28 the Kaplan office agreed with plaintiff's attorney that, because their clients were discussing settlement, Electronovision would not be required to plead until further notice. Magna's attorney was informed of this.

On August 26 the Kaplan office received a letter from Sargent instructing that it "incur no further legal expense for Electronovision" and relieving the firm of further responsibility. The letter explained that Electronovision had no funds and there were judgments against it totaling $200,000.

The default judgment, which followed on September 2, came as a complete surprise to Magna's attorney. He immediately communicated with the offices of his client in New York and San Francisco, who advised that relations between Magna and Electronovision had become strained as a result of controversies arising under the distribution agreement, and that Electronovision had given Magna no hint of its intention to abandon the defense of the lawsuit.

The motion of Magna to set aside the judgment, accompanied by declarations, points and authorities, and a proposed answer of Magna, was filed on October 22. Supplemental declarations were filed prior to the hearing. On November 24 Sarfaty located Electronovision's president, Sargent, in London, who reiterated on the telephone his statement that the plaintiff's claim was invalid, and that he would be available to testify upon his return to the United States. This report was later confirmed by Sargent's formal declaration under penalty of perjury.

The declaration of Saul Barnett, a member of the Kaplan firm, stated that as attorney for Electronovision he was

familiar with all of the circumstances and was of the opinion that Electronovision had a good defense to the entire action. He declared that he had personally participated in the negotiations leading to the contract referred to in the complaint; that this contract only gave Electronovision an option on plaintiff's treatment and services for $5,000; that the option was never exercised, and that there was never any promise to pay plaintiff anything more unless the option was exercised. Sargent's declaration was to the same effect.

Plaintiff countered this with the declaration of his attorney, Harold Abeles, who stated that in February 1965 Electronovision had orally agreed unconditionally to pay plaintiff $45,000 in the event the picture was made without using plaintiff's script, but that ''in accordance with the practice of the entertainment industry,'' this part of the agreement had not been reduced to writing.

Code of Civil Procedure section 473 authorizes a court to relieve a party from a judgment taken against him through his mistake, inadvertence, surprise or excusable neglect. This record shows without contradiction that Magna relied, justifiably, upon the promise of Electronovision to defend the action, through competent attorneys employed for that purpose. The withdrawal of the attorneys, and the default proceedings which followed, took Magna entirely by surprise. Even though we assume that plaintiff proceeded in good faith, and in ignorance of Magna's interest as financial backer of the release bond, the effect was to deprive Magna of its property without notice or hearing. Upon learning what had occurred, Magna acted promptly to seek relief. This record brings Magna well within the protection of section 473.

The case law requires the party moving under section 473 to make some showing on the merits. ''The reason for the rule requiring an affidavit of merits is that a valid judgment should not be set aside unless it is made to appear, *prima facie*, that a different result would probably be reached.'' (*Greenamyer* v. *Board of Lugo etc. School Dist.*, 116 Cal.App. 319, 325 [2 P.2d 848].) But hearing on the motion is not the occasion to try the merits (*Rauer's Law etc. Co.* v. *Gilleran*, 138 Cal. 352 [71 P. 445]; *Brasher* v. *White*, 53 Cal.App. 545, 554 [200 P. 657]) unless it is made to appear that the defense is sham or frivolous. (*Bethlahmy* v. *Customcraft Industries, Inc.*, 192 Cal.App.2d 308, 311 [13 Cal.Rptr. 310]; *Cann* v.

*Parker,* 84 Cal.App. 379, 381 [258 P. 105] ; see 3 Witkin, Cal. Procedure (1954) p. 2112.)

By this standard Magna's showing on the merits was sufficient. If there is truth in the matters averred in the declarations made under penalty of perjury by Barnett and Sargent, there is a complete defense to the action. The factual issue is one to be decided at a trial. It was an abuse of discretion to deny relief upon the showing which was made.

The orders appealed from are reversed.

Jefferson, J., and Kingsley, J., concurred.

The petition of the plaintiff and respondent for a hearing by the Supreme Court was denied November 8, 1967.