[Civ. No. 2605. Third Appellate District.—May 14, 1923.]

# I. SOFUYE, Appellant, v. PIETERS-WHEELER SEED COMPANY (a Corporation), Respondent.

[1] Default—Application for Relief—Discretion of Trial Court. An application for relief under section 473 of the Code of Civil Procedure from the consequences of a default judgment is addressed to the sound judicial discretion of the court to which such application is made; and, unless it can be said from the face of the record on appeal that, in granting or disallowing such a motion, the *nisi prius* court has abused the discretion committed to it in disposing of such a proceeding, the order will not be disturbed on appeal.

[2] Id.—Construction of Section 473, Code of Civil Procedure—Disposition of Cases upon Merits.—The power vested in trial courts by section 473 of the Code of Civil Procedure should be freely and liberally exercised by said courts to the end that they might make and direct their proceedings so as to dispose of cases upon their substantial merits, and without unreasonable delay, regarding mere technicalities as obstacles to be avoided rather than principles to which effect is to be given in derogation of substantial rights.

[3] Id.—Reliance upon Promise of Third Party to Defend Action—Excusable Neglect.—Defendant having paid to a third party the sum of money which was due plaintiff's assignor, pursuant to a prior oral understanding with said assignor and upon an agreement between defendant and said third party that the latter would protect and defend defendant against any action which plaintiff might bring against defendant to recover the money so paid, and defendant having relied upon that agreement and forwarded the summons and complaint to the general manager and attorney in fact for said third party, defendant's act being characterized by good faith and an honest belief that said third party would, upon receiving the summons and complaint, seasonably interpose an answer or demurrer, it acted as' any reasonably careful person would act and, therefore, its neglect to answer within due legal time was clearly excusable, within the meaning and intent of section 473 of the Code of Civil Procedure.

APPEAL from an order of the Superior Court of San Joaquin County setting aside a default judgment. D. M. Young, Judge. Affirmed.

The facts are stated in the opinion of the court.

Smallpage & Rex for Appellant.

Mastick & Partridge and Brooks Cox for Respondent.

HART, J.—The plaintiff prosecutes this appeal from an order setting aside a default judgment entered against the defendant on the seventeenth day of March, 1922.

The plaintiff is the assignee of one S. Kagi of the latter's interest in a certain contract entered into between said Kagi and the defendant on January 3, 1921. By the terms of said contract Kagi was to plant certain land then occupied by him in what is known as "The New Hope Pocket," San Joaquin County, in carrots, beets, parsnips, and parsley with seed to be furnished by the defendant. Kagi was to "tend, cultivate, and harvest the seed of such crops and to deliver such seed to defendant f. o. b. Hood, California." The defendant, in addition to furnishing such seed, was also to furnish the necessary sheets and bags for harvesting the crops and to pay said Kagi for the use of said land and for his services for the work required for the purpose, as follows: Twelve cents per pound for carrot seeds; eight cents per pound for beet seed; eight cents per pound for parsnip seed, and ten cents per pound for parsley seed, all to be marketable and produced and delivered, deducting, however, from the total amount of seed raised and delivered an amount of seed of the various kinds equal to the amount of seed of such kinds furnished by defendant to said Kagi to plant. It was further provided in said contract that, in case said Kagi failed or neglected properly to care for, cultivate, and harvest said crops of seed, defendant might do so, and might, in such event, charge the reasonable and necessary cost of doing said work to said Kagi. Under this contract defendant furnished said Kagi the necessary seed of the various kinds mentioned and Kagi planted the same in said land. It is alleged in the complaint that Kagi failed to fully harvest and deliver the same to the defendant and that pursuant to the provisions of said contract that the defendant, upon such failure, might itself complete the harvesting of said crops, the said defendant did harvest the same, took possession thereof and, so states the complaint, "necessarily expended in so doing certain moneys, but that plaintiff has no knowledge or information sufficient to en-

able him to state what moneys were so expended by defendant." It is alleged, upon information and belief, that 31,580 pounds of carrot seed, 9,094 pounds of beet seed, 4,500 pounds of parsley seed, and 24,450 pounds of parsnip seed were harvested from said land and received by the defendant, and that the aggregate value thereof, figuring according to the agreed prices therefor, was the sum of $6,923.12, minus the necessary cost and expenses in completing the harvesting and delivery of said crops and also the amount due the defendant for the quantities of the several kinds of seed which defendant furnished said Kagi for planting, as to which amounts, the complaint states, the plaintiff has no such information or knowledge as to enable him to state the precise or approximate total thereof. The complaint further states that there is to be deducted the sum of $500 which was advanced under said contract by defendant to said Kagi. The prayer of the complaint is for an accounting by the defendant to him for the said crops of seed and that, upon the ascertainment by such accounting of the amount due the plaintiff, he be awarded judgment against the defendant for said amount.

The complaint was filed January 20, 1922. Summons was issued on the same day and the same was forwarded to the sheriff of the county of Santa Clara, who, on the twenty-third day of January, 1922, served the same, together with a copy of the complaint, upon L. W. Wheeler, the president of the defendant, at the city of Gilroy, in the county of Santa Clara. The defendant having failed to appear and demur to or answer the complaint within the time prescribed by law, a demand was made by the plaintiff on the third day of March, 1922, for the entry of a default against said defendant and the clerk of the court, in accordance with said demand, entered said default. Thereafter, and on the thirteenth day of March, 1922, the court received evidence in support of the complaint and on the 17th of March filed its findings of fact, conclusions of law, and default judgment in favor of the plaintiff for the sum of $2,215.94.

On the sixth day of April, 1922, the defendant filed a notice of motion to set aside the default judgment on the ground that the defendant failed to answer the complaint within the time prescribed by law by reason of its "mistake, inadvertence, surprise and excusable neglect." (Sec. 473,

Code Civ. Proc.)   Said notice fixed Monday, the tenth day of April, 1922, at 10 o'clock A. M. for the hearing of the motion. With this notice of motion the defendant filed an affidavit of merits made by L. W. Wheeler, the president of the defendant corporation, and also relied, in furtherance of the motion, on an affidavit filed on March 25, 1922, and made by W. H. George, the general manager and the attorney in fact for S. H. Cowell, Isabella M. Cowell, and Helen E. Cowell, the owners of the land upon which the seeds referred to were grown and who had leased said land to said Kagi, said affidavit having been so filed in support of a motion previously noticed to stay execution of the default judgment. Accompanying these papers was also a proposed answer to the complaint. It is admitted by the appellant in his brief that respondent's proposed answer states a good defense to the complaint and, therefore, it will not be necessary to reproduce herein the contents of the proposed answer.

The affidavit of L. W. Wheeler, after stating that deponent is president of the defendant corporation and briefly reciting the terms of the contract between said defendant and the said Kagi, is in substance as follows: That at the time that said contract was entered into an agreement was had between the defendant, Kagi and the Cowells, above named, that Kagi was to execute and give to the said Cowells a chattel mortgage on the crops to be grown on said land as security for the payment of any rent which might fall due and become payable to the latter who, as seen, were the owners of the land; that it was further agreed that there should be excepted from said chattel mortgage any seeds which might be furnished and delivered to the defendant under its contract with Kagi upon the distinct understanding and agreement that any sums to become due to said Kagi under said agreement should be paid to the Cowells as further security for the payment of any rent due for the use of the land; that under the contract between Kagi and the defendant the sum of $1,157.79, and no more, became due to the former; that demand was made upon defendant by the plaintiff herein for any moneys due under said contract, and that when said demand was made the defendant agreed with the said Cowells and the latter agreed with the defendant that they would defend and protect the said defendant

against any claim the plaintiff might make herein against the defendant for any sums due to said Kagi under the said contract, and that under said understanding and agreement the said defendant paid to the Cowells the said sum of $1,157.79, due and payable to said Kagi under his contract with the defendant; that the summons and copy of the complaint in this action were served upon the affiant as the president of the defendant, as above stated, on the thirty-first day of January, 1922, and that, acting upon the understanding and agreement with the Cowells that the latter would protect and defend the defendant in any suit or action brought by the plaintiff against the defendant to recover the said sum of $1,157.79, he forwarded said summons and complaint to W. H. George, the general manager and attorney in fact of the Cowells; that affiant believed that said Cowells would proceed to answer the said complaint and defend the said action; that the defendant, under the terms of the contract with Kagi, was justly indebted to the latter in the sum of $1,157.79 and no more, "excepting that it was clearly understood and agreed that the same should be paid to the said S. H. Cowell, Isabella M. Cowell and Helen E. Cowell as security for any moneys due from S. Kagi to the said" Cowells; "that affiant is informed and believes and, therefore, alleges that judgment has been entered against said defendant for more than double the amount which would be justly due to the said S. Kagi under any circumstances."

The affidavit of W. H. George, above referred to, declares that the land upon which the seeds were grown was leased to S. Kagi by the Cowells above named; that Kagi made, executed, and delivered to the Cowells a chattel mortgage on all growing crops to be raised on said land for the season, December 1, 1920, to December 1, 1921, except those raised under contract with the said defendant; that the Cowells had an understanding and agreement with Kagi and the defendant that the chattel mortgage should not cover the seeds raised under the contract between Kagi and the defendant "for the reason that the said Pieters-Wheeler Seed Company was unwilling to make the necessary advances for planting, cultivating, and harvesting the said seed crop if the same were covered by a chattel mortgage," and that there was a further understanding

and agreement between Kagi, the defendant, and the Cowells that there should be and there was assigned to the Cowells all the proceeds and profits of the said seed crops over and above the advances made by the defendant, to be applied by the Cowells "upon the payment of the said sums due from the said Kagi to the said S. H. Cowell, Isabella M. Cowell and Helen E. Cowell"; that at or about the time of harvest in the year 1921 Kagi absconded and disappeared and abandoned the said land and the seed crops thereon and did not pay the rent of said land or the other sums due the Cowells and that said Cowells commenced a suit in the superior court of the city and county of San Francisco to foreclose the said chattel mortgage; that the value of the property covered by said mortgage is wholly insufficient to pay the sums due the said Cowells and that said Kagi is utterly insolvent and has no property of any kind or character whatsoever; that in accordance with the understanding and agreement with the said Cowells, the said Kagi and the said defendant, the last named accounted to the said Cowells and paid to them the sum of $1,157.79, which was all that was due the said Kagi under the agreement with the defendant for the raising of said seed; that on or about the twentieth day of January, 1922, the present action was commenced and copy of the complaint served upon the defendant in the city of Gilroy, county of Santa Clara, on the thirty-first day of January, 1922; that affiant, as manager of the Cowells, agreed with the defendant to defend and protect it against the claim of the plaintiff, I. Sofuye, and in accordance with said agreement the defendant forwarded the summons and copy of the complaint to the affiant in the city of San Francisco, "but the affiant believed that the whole matter was covered in the suit to foreclose the said chattel mortgage and neglected to take the matter up with his attorney, whereupon the said plaintiff has entered the default of said defendant and obtained judgment thereon, as affiant is informed and believes, for a sum more than double the amount which could have been, by any possibility, due to the said S. Kagi"; that affiant has fully and fairly stated the facts of the case to his attorney and is informed by the said attorney and, therefore, states that the Cowells have a claim to the moneys due from the

said defendant prior to and superior to the claim of the said I. Sofuye.

No counter-affidavit was filed or any showing otherwise made in rebuttal of the salient facts set forth in the foregoing affidavits. One of the attorneys for the appellant did make and file an affidavit, which, however, contains nothing which affects or bears upon the question to be determined upon this appeal.

[1] It cannot justly be declared, upon the record as it is presented here, that the action of the court below in granting the relief asked for by the defendant involved error.

An application for relief under section 473 of the Code of Civil Procedure from the consequences of a default judgment is addressed to the sound judicial discretion of the court to which such application is made; and, unless it can be said from the face of the record on appeal that, in granting or disallowing such a motion, the *nisi prius* court has abused the discretion committed to it in disposing of such a proceeding, the order will not be disturbed on appeal.

[2] It has for many years uniformly been held in this state that the power vested in trial courts by section 473 should be freely and liberally exercised by said courts to the end that they might "make and direct their proceedings so as to dispose of cases upon their substantial merits, and without unreasonable delay, regarding mere technicalities as obstacles to be avoided rather than principles to which effect is to be given in derogation of substantial rights." (*Roland* v. *Kreyenhagen*, 18 Cal. 455; *Brasher* v. *White*, 53 Cal. App. 545 [200 Pac. 657, 661].)

In *Nicoll* v. *Weldon*, 130 Cal. 667 [63 Pac. 64], it is said: "Section 473 . . . is a remedial provision, and is to be liberally construed so as to dispose of cases upon their substantial merits and give to the party claiming in good faith to have a substantial defense to the action an opportunity to present it. (*Buell* v. *Emerich*, 85 Cal. 116 [24 Pac. 644]; *Harbaugh* v. *Honey Lake etc. Water Co.*, 109 Cal. 70 [41 Pac. 792]; *Melde* v. *Reynolds*, 129 Cal. 308 [61 Pac. 932].) It is for this reason that we more readily listen to an appeal from an order refusing to set aside a default, than where the motion has been granted, since in such case the defendant may be deprived of a substantial

right, whereas it may be assumed, if nothing to the contrary is shown, that the plaintiff will be able at any time to establish his cause of action. If, for any reason, he will be unable to do so, that fact should be made to appear; but if he is merely subjected to delay or inconvenience by having the default set aside, he can be compensated therefor by the terms which the court will impose as the condition of granting the motion.''

In *Berri* v. *Rogero*, 168 Cal. 736 [145 Pac. 95], the rule enunciated by section 473, where that section has been successfully invoked in a proceeding involving the application to be relieved from a default judgment, is admirably expounded by Chief Justice Sullivan, as follows: ''The law does not favor snap judgments. The policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. Where a party in default makes seasonable application to be relieved therefrom, and files an affidavit of merits alleging a good defense, and the plaintiff files no counter-affidavit and makes no showing that he has suffered any prejudice or that injustice will result from the trial of the case upon its merits, very slight evidence will be required to justify a court in setting aside the default. A broad discretion is allowed to courts in granting relief against default and it is in cases only where the lower court has abused its discretion that the appellate court will reverse its action. Counsel for appellant and respondents in their briefs agree, and this court agrees with them, that the following is a correct statement of the rule applicable to courts in dealing with defaults: 'It is largely a matter of discretion, to be liberally exercised by the court in the furtherance of justice, and where the action of the trial court will result in a trial upon the merits, the appellate courts are very reluctant to interfere with the exercise of such discretion, and will do so only where it clearly appears that there has been a plain abuse of discretion.' ''

It is said in *Vinson* v. *Los Angeles Pac. R. R. Co.*, 147 Cal. 479, 483 [82 Pac. 53], that, where the trial court has granted or refused to grant an application for the setting aside of a default judgment, an appellate court will not

interfere with the exercise of the discretion of the court below, "except in a case where a clear abuse of discretion is apparent. Particularly is this so where the discretion is exercised in favor of the granting of the relief sought, as such action tends to bring about a conclusion on the merits, *which is always to be desired.* (*O'Brien* v. *Leach,* 139 Cal. 220 [96 Am. St. Rep. 105, 72 Pac. 1004].) It has been said by this court that where the circumstances are such as to lead the court to hesitate in such a matter, it is better, as a general rule, that the doubt should be resolved in favor of the application. (*Watson* v. *San Francisco & Humboldt Bay R. R. Co.,* 41 Cal. 17.)"

1. It cannot be doubted that, under the circumstances, the defendant in this case proceeded within a reasonable time after the default was entered to take the necessary legal steps for securing an order setting aside the default judgment. The affidavit of W. H. George was filed eight days after the entry of judgment, and while this affidavit was not, when filed, intended as in furtherance of a motion to set aside the default, no such motion then having been filed, its purpose was, nevertheless, to secure a nullification of the default judgment and, as seen, was used in support of the motion subsequently made. The motion was filed nineteen days after the default judgment was entered. One of the attorneys for the plaintiff addressed a letter at Stockton under date of March 18, 1922, to the defendant's manager at Gilroy in Santa Clara County, in which he notified the defendant of the entry of the judgment "on the sixteenth day of March, 1922, in the sum of $2,215.94," and it may safely be assumed that this letter was not received by the defendant's manager at Gilroy until the 20th or 21st of March.

[3] 2. The neglect of the defendant to answer the complaint within the time required by law was, as we have seen, due to the fact that the defendant had paid to the Cowells the sum of $1,157.79 which was coming to Kagi from the defendant upon an agreement beteen the defendant and the Cowells that the latter would protect and defend the defendant against any action which the plaintiff, as assignee of Kagi, might bring against the defendant to recover the amount so paid to the Cowells. While it was, as a matter of law, the duty of the defendant to have an-

swered the complaint, still its reliance entirely upon the
Cowells to keep their agreement to defend the action and
thus protect the defendant appears to have been character-
ized by good faith and an honest belief that the Cowells
would, upon receiving the summons and copy of the com-
plaint, seasonably interpose an answer or demur to the
plaintiff's pleading. In relying upon the promise of the
Cowells or their manager to take the necessary steps to
defend against the claim of plaintiff, the defendant acted
as any reasonably careful person would ordinarily act, and,
therefore, its neglect to answer within due legal time is, in
our judgment, clearly excusable, within the meaning and
intent of section 473. Viewing these considerations, to-
gether with the fact that defendant acted within a reason-
able time after having been notified of the entry of the
default judgment and the showing of a meritorious defense
to the action, we have here a case to which the following
observations in the case of *Vinson* v. *Los Angeles Pac. R. R.
Co.*, 147 Cal. 479 [82 Pac. 53], have peculiar and singu-
larly pertinent application: "The inadvertence or neglect
here was one that well might occur to a reasonably careful
man. There is no pretense of bad faith, and the applica-
tion for relief was made so promptly after the expiration of
the ten days that no appreciable injury could have been
caused to plaintiffs by the delay."

It is contended, however, that, in order to make a case
for the relief sought herein, it was necessary to show a legal
excuse for the neglect of George, as the agent of the Cowells,
in not answering the complaint within the time required,
and that no such showing was made. The argument in
support of this contention is that under the agreement be-
tween the Cowells and the defendant the relation of prin-
cipal and agent was created and that the neglect of the latter
is imputable to the defendant itself. Cases in which it is
held that the negligence of the defaulting party's attorney
to answer within the time prescribed constituted the negli-
gence of the client are cited to sustain the argument thus
advanced. We think, however, there is a difference be-
tween the two situations. While it is true that there was
an element of principal and agent created by the agreement
between the defendant and the Cowells, yet it cannot be
said that it was such a relation as exists between attorney

and client. An attorney holds himself out as one who will faithfully perform any service within the scope of his profession committed to him by a litigant or a client and when employed in his professional capacity is always specifically charged with the duty of taking such steps as the case requires shall be taken to protect or conserve the rights of the client. Here the defendant acted upon an agreement with parties who, so far as we know from the record, are not attorneys at law or professionally engaged in attending to the legal business of others. In other words, under the agreement between the defendant and the Cowells the latter were not employed to act as the former's attorneys or in a professional capacity. Hence the question for the court to determine was whether the defendant, in placing dependence upon the good faith of the Cowells as to the agreement between them and the former, acted in good faith and as a reasonably prudent business man would ordinarily act under such circumstances.

It is further contended that, since the defendant paid to the Cowells the sum due from it to Kagi and the Cowells thereupon agreed to defend any action which the plaintiff might institute to recover said money from the defendant, the latter has no financial interest in the action or its outcome; that, therefore, it has no such interest in the action as to justify it in interfering in any manner with the default judgment which was entered against it. There is no support either in law or in fact for this contention. The affidavits show that the judgment was against the defendant for a sum far in excess of any amount which Kagi or his assignee would in any event be entitled to recover. Moreover, if it should transpire that the defendant had illegally paid to the Cowells the sum which it admitted was due Kagi it would be liable to the assignee of Kagi for the amount so paid, albeit in such case it would have a right of action against the Cowells for the return of said money. In this connection it may be suggested that the court, as it should have done, in passing upon the motion, in all probability took into consideration the fact, as alleged in the affidavits filed by the defendant, that the amount of the default judgment was so far beyond that which the plaintiff would in any case be entitled to recover

that it would be unjust and perhaps result in injustice if the defendant were not permitted to litigate the claim involved in the judgment.

We have carefully examined the cases cited by the appellant and find that there is nothing in any of them which militates against the conclusion at which we have arrived. Each case must be determined upon its own peculiar circumstances and by the light of the rules as to such proceedings as this which are expounded and applied in the cases to which we have above referred.

The order appealed from is affirmed.

Burnett, J., and Finch, P. J., concurred.