[Civ. No. 15128.   Second Dist., Div. Two.   Jan. 11, 1946.]

VIRGINIA RANDALL ELMS, Appellant, v. JOHN WILLIAM ELMS, JR., Respondent.

Frank H. Love for Appellant.

No appearance for Respondent.

MOORE, P. J.—The question for decision is whether the trial court abused its discretion in vacating a judgment of annulment under section 473, Code of Civil Procedure, where defendant had filed a general denial, had authorized his counsel to stipulate that the case might be tried in defendant's absence as a default case, was notified of the trial date one week prior thereto and did not attend the trial but by telegrams discharged his attorney and requested the court to grant a continuance and permit him to file a cross-complaint. Respondent makes no appearance on this appeal.

The parties had celebrated a marriage ceremony at Vallejo in January, 1945. On May 9 plaintiff filed this action in three counts for annulment, including in the third count a charge of defendant's sexual perversion. On the following day defendant, then a member of the naval forces, by writing authorized attorney Seay to file answer and "to stipulate with opposing counsel that the matter may be set down for trial

in my absence and that the same may be heard as a default case.'' On May 11 defendant's appearance was prepared containing a stipulation that the count charging sex perversion be dismissed and that his pleading be filed within ten days. Such appearance was filed on May 23 by his answer containing a general denial. On May 31 counsel filed a stipulation qualifying the action for immediate trial and it was set for June 7 at 9:30 a. m. While defendant was promptly advised of the date of trial and was able to attend he made no appearance. Plaintiff made proof and obtained a decree annulling the marriage.

Following his change of counsel defendant on June 21 served and filed his motion to set aside the judgment on the ground that it ''was taken against the defendant through his mistake, inadvertence, surprise and excusable neglect.'' (Code Civ. Proc., § 473.)

### 1. Defendant's Supporting Affidavit

In support of the motion defendant presented his own affidavit in which he avers that the judgment was taken (1) through his excusable neglect, etc., and through the collusion of his attorney with counsel for plaintiff; (2) that he had lived happily with his wife until her mother visited them in April; that plaintiff then announced that she desired a divorce; that on May 4 she journeyed to Los Angeles and on her return stated that her attorney had papers drawn for annulment; that she then presented him an answer for his verification and a letter authorizing attorney Seay to act for him; that he did not see a copy of the complaint until June 11; that prior to June 9 he was unaware that Seay occupied offices in the same suite with plaintiff's attorney; that he did not sign the two documents until May 15 when he was confined to the hospital at Vallejo and after signing he delivered them to plaintiff for mailing upon her representation that she would withhold action pending his recovery and that if he, after a rest, should recover she would resume living with him; that he was induced to sign the papers by her statement that she would visit him no more unless he signed them; that on May 30 he was informed by plaintiff that the trial date was June 7; that about June 1 he made demand upon Seay that he cause a postponement of the action until September 1, 1945, and to supply him with a copy of plaintiff's complaint; that while the attorney's letter enclosed with the copy was dated June 4,

it was not posted until June 6, 1945, and on June 7 was received by defendant; that he had not been informed of the stipulation for a trial on June 7 before his receipt of that letter; that on June 4, by telegram, he withdrew his "authorization and answer" on the ground of plaintiff's misrepresentations and declared his desire to contest the action; that at the same time he wired the county clerk to the same effect, requesting him to inform the judge that he desired to change attorneys "and file answer and cross complaint"; that on June 7 plaintiff and her counsel appeared before the trial court and introduced her proof that the marriage had not been consummated by the sexual act by reason of defendant's inability or refusal; that Seay was present but did not request a continuance or advise the court of defendant's desire to contest the action; that he did not know until June 11 when he read the original complaint that he had been accused of being a sex pervert; that he did not know prior to June 7 that plaintiff claimed that the marriage had not been consummated; that in answer to his inquiry as to the grounds of her action plaintiff had stated that she had alleged that defendant "was presently unable to consummate sexual relations due to his nervous condition for which he had been hospitalized"; that prior to June 7 he did not know that the attorneys had stipulated to set the case for trial on that day; that prior to June 11 he did not know that Seay had signed the stipulation with Mr. Love on May 11 or that it had been filed on May 23; that while he had advanced no moneys for costs he discovered on June 11 that Seay had paid $5.50 for defendant's appearance; that on May 22 he refused to sign a serviceman's waiver consenting to the action when requested to do so by plaintiff and then stated to her "that he regretted signing the authorization to attorney Seay and the verification of the answer presented to him by plaintiff"; that the allegations of the complaint are wholly untrue; that the marriage was consummated on January 15, and "continuously thereafter and until on or about the 8th day of April, 1945, plaintiff and defendant had continuous sexual relations"; that on or about said date defendant became temporarily incapacitated; that he has been informed by the doctors at the naval hospital that his nervous condition and his sexual incapacity had resulted from his over-indulgence in sexual relations with plaintiff; that on or about April 15 plaintiff would not permit him in their bedroom.

## 2. The Guiding Rules

■ While it is the judicial policy liberally to construe section 473 to the end that trials on the merits may be had, we find nothing in defendant's affidavit to warrant an order vacating the annulment decree. To do so would be to grant a new trial at the capricious demand of a defendant who was either grossly negligent or had changed his mind after the judgment. ■ One may not be relieved from his default unless he makes a showing that he has acted in good faith and demonstrates that his excusable neglect was the actual cause of his failure to attend the trial. ■ Neither one's change of mind nor his inexcusable negligence is ground for vacating a judgment. To warrant relief under section 473 a litigant's neglect must have been such as might have been the act of a reasonably prudent person under the same circumstances.

■ The inadvertence contemplated by the statute does not mean mere inadvertence in the abstract. If it is wholly inexcusable it does not justify relief. (Freeman on Judgments, 5th ed., vol. 1, p. 482; *Shearman* v. *Jorgenson,* 106 Cal. 483, 485 [39 P. 863].) ■ It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment. Unless in arranging for his defense he shows that he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business his motion for relief under section 473 will be denied. (Freeman, 483, 5th ed.) Courts neither act as guardians for incompetent parties nor for those who are grossly careless of their own affairs. All must be governed by the rules in force, universally applied according to the showing made. (*Gillingham* v. *Lawrence,* 11 Cal.App. 231 [104 P. 584].) ■ The law frowns upon setting aside default judgments resulting from inexcusable neglect of the complainant. The only occasion for the application of section 473 is where a party is unexpectedly placed in a situation to his injury without fault or negligence of his own and against which ordinary prudence could not have guarded. ■ Neither inadvertence nor neglect will warrant judicial relief unless it may reasonably be classified as of the excusable variety upon a sufficient showing. (*Hughes* v. *Wright,* 64 Cal.App.2d 897 [149 P.2d 392].)

A judicial proceeding is not to be treated by a party as a

game of blindman's buff in which the participants may enter or withdraw at will. It is successor to the duel, in which, after the challenge had been accepted, both parties were obliged to comply with the code duello and to stand on the line until the deadly discharge. Diligence is the watchword and to be on the alert is the constant directive. ▇ If judgment be entered against a party in his absence before he can be relieved therefrom he must show that it was the result of a mistake or inadvertence which reasonable care could not have avoided, a surprise which reasonable precaution could not have prevented, or a neglect which reasonable prudence could not have anticipated. (See *McGuire* v. *Drew,* 83 Cal. 225 [23 P. 312].) ▇ After such an order has been entered a party may not gain a declaration of its nullity merely because his suggested proof was not before the court. After the service of summons upon or a voluntary appearance by a defendant the safeguarding of his interests devolves upon him and he will neither be granted a new trial upon his mere request nor be accorded relief under the statute (§ 473) for inexcusable neglect or as reward for his change of mind. In any event he must show that upon a trial with his forces all present a different judgment would probably ensue.

### 3. RESPONDENT'S AFFIDAVIT IS INSUFFICIENT

▇ Neither defendant's supporting affidavit above outlined nor his rebuttal affidavit discloses mistake, inadvertence, surprise or excusable neglect. According to his own averments as early as May 7 plaintiff informed him that she had retained counsel and drawn papers for annulment. She then requested him to verify the answer she presented and to execute an authorization to attorney Seay. If he did not see the complaint then he knew at that time, as well as after reading it on June 11, that it had been filed. That he retained possession of those documents for eight days before signing them indicates deliberate, meditated decision rather than an act of neglect. That he signed them while in the hospital on plaintiff's promise that she would not use them but would resume life with him after his restoration to normal condition is negated by his very act of delivering the executed documents to her for mailing to Seay. That he relied upon plaintiff's statement as to the grounds of her action before signing his answer is not excusable neglect. That he was unaware prior to June 11 of the "appearance and stipulation" signed by Seay and filed May 23 not only shows a wilful act but

is contradicted by his statement to plaintiff on May 22 that he regretted "signing the authorization to attorney Seay." He discourses at length concerning his acts after plaintiff informed him on May 30 that the cause had been set for trial on June 7. He knew then a trial was only eight days ahead and that prompt action was essential to forestall a judgment of annulment. But not until five days had thereafter elapsed did he telegraph for a copy of the complaint. Such non-chalance and indifference could not be distorted into any type of excusable neglect. If he changed his mind after executing the authorization on May 22, reasonable diligence or care necessitated an immediate and direct scrutiny of the course the proceedings had hitherto taken. Prior to the entry of the decree he had discussed the action with no one other than plaintiff. On June 7 Seay was still his counsel or he had been discharged; if the former, he carried out the stipulation that the case should be tried as a default; if the latter, he had no authority to make requests of the court for a continuance. There is nothing excusable in defendant's neglect after May 30. Inasmuch as the answer file contro-verted all the allegations remaining in the complaint if he had desired to prevent an annulment on June 7 his clear course was to be present at the trial where he might either plead for a continuance or give his testimony. By so doing he would have been in a position to defeat the action or to gain delay or to lay the foundation for establishing his dili-gence.

The behavior of defendant at no stage of the proceeding discloses excusable neglect, but on the contrary, first, a def-inite plan to permit a judgment of annulment and, second, a subsequent change of mind. In presenting his motion de-fendant offered no new pleading but reaffirms his faith in his original answer. Having made no excuse for his non-appearance at the trial he must be presumed to have had the ability to reach the court. Other than his contradiction of plaintiff's testimony he presents no fact to indicate that upon a retrial annulment would be denied. His mere offer to refute her proof offers little hope for his triumph in view of his ad-mission of his present inability to effect coition and of the declarations in his letters.

### 4. COUNTER AFFIDAVITS

Conceding *arguendo* that the affidavits of defendant make a prima facie case for relief, the counter affidavits of

plaintiff indicate an arbitrary decision upon the total proofs. The answer was verified by defendant before a notary public of Solano County, and it together with the authorization to attorney Seay to appear for defendant were sent through the mail by defendant or his Vallejo counsel to Mr. Seay. To demonstrate the preponderance of plaintiff's showing upon the hearing of the motion for relief the substance of her counter affidavits follows.

*Mrs. Randall,* mother of plaintiff, avers that while visiting plaintiff and defendant at Vallejo on March 30, 1945, upon their invitation to discuss their marital difficulties defendant then told her that he had committed a terrible wrong against plaintiff in not having advised her of his sexual impotence prior to their marriage; it was then agreed that plaintiff and defendant should discuss the problem with his naval chaplain; on May 3, 1945, they informed affiant that pursuant to the chaplain's advice they had consulted a naval doctor and that the latter had advised them that defendant's impotency was of a permanent nature; on May 10 when defendant came to plaintiff's home affiant served him with a copy of the complaint and summons for annulment; at midnight of the same day defendant returned to plaintiff's home and created such a disturbance as to necessitate his arrest; on the second day following he called again and stated that he was not going to contest the case but that he would be discharged and return to his home in South Carolina.

*Mary Gelling* of Solano County averred that on the afternoon of June 1, 1945, she and plaintiff were met by defendant on a street in Vallejo; in their conversation defendant objected to some things alleged in the complaint, to which *plaintiff replied that defendant's doctor and the chaplain had both told defendant that due to his physical condition he should never have married and that his doctor had said that the trouble was of long standing and that defendant had agreed that he should have advised plaintiff of his condition prior to his marriage;* at the same time defendant stated that since the objectionable part of the complaint had been eliminated the pleading was now satisfactory and *he would not contest it, and would not be present at the trial* but would return to his home in South Carolina; that he had been advised by Mr. Seay that the case had been set for trial on June 7, and that he then advised plaintiff to return at once to Los Angeles for the trial.

Plaintiff's affidavit exposes her own recollection of the year's unhappy events. She avers defendant's sexual impotence and her own utter ignorance prior to the marriage of defendant's incapacity; had she possessed such knowledge she would not have contracted the marriage; after some weeks of defendant's demonstration of his incapacity she visited her mother in Los Angeles for over 20 days; upon her return to Vallejo she accompanied defendant on a visit to the naval physician. After their second call the doctor advised that defendant's condition was of long standing, was unusual, and that defendant was so far sexually dissipated that his condition was incurable and that they should annul the marriage. Shortly after May 4, 1945, plaintiff and defendant again conferred with the chaplain and physician who advised defendant that he was incapable of consummating a marriage and that he should execute a waiver of the provisions of the Soldiers' and Sailors' Relief Act of 1940. Defendant replied that he had already discussed that phase of the matter with an attorney in the navy; that he would sign the waiver and that it would be satisfactory for plaintiff to file complaint for annulment. On the same day plaintiff proceeded to Los Angeles and caused her attorney to prepare a complaint, summons, and waiver. The complaint was filed and thereafter was served upon defendant by Mrs. Randall. On May 9 defendant penned a letter to plaintiff containing the following declarations: "I am not physically qualified to make a go of our marriage. . . . I shall seek a place of rest where those in my condition go. . . . I am in no physical condition for you to love or stand by me. . . . I can't ask you to love me as I am." Plaintiff avers the meeting of defendant with herself and Mary Gelling and avers substantially the same occurrences and declarations as stated by Miss Gelling, after which defendant stated, "I talked with my lawyer, Lloyd J. Seay, in Los Angeles on May 30 on the telephone and he told me that your lawyer had agreed to dismiss that part of the complaint I didn't like so it is ok with me now and I am not going to fight it. . . . He told me that he had agreed with your lawyer to put it on the calendar of the court for June 7 and that it would be tried on that day. . . . I am going back to my home in South Carolina and forget all about you and California." On the night of June 2, upon plaintiff's return from a party with some friends, she had a heated argument with defendant on the porch of her home, and in the presence and hearing of

Mr. and Mrs. Whiting who lived next door she said to defendant, "I will see you in court in Los Angeles next Thursday," to which defendant replied, "Oh no you won't because I am not going down there."

*John L. Roberts,* an attorney at law in Los Angeles, averred that on June 9 he was present in the office of attorney Frank H. Love when defendant asked Mr. Love if the court had continued the annulment case from June 7 to a future time as requested by his telegram to the court. Love replied that the annulment was granted on June 7; defendant stated that he had been discharged from the navy; that throughout the pendency of the annulment action he had consulted with a lawyer in the navy and had relied upon the advice so gained; that he knew that his case was set for trial on June 7, 1945, at 9:30 a. m.; that Seay had so advised him on May 30 by telephone and that plaintiff had told him the same thing on June 1. At the same time defendant stated to Mr. Love that the telegrams of June 4 to Mr. Seay and to the county clerk had been prepared and sent by an attorney in the navy; that the telegrams were prompted by his fury at plaintiff when he discovered that she had attended a party on the night of June 2; that he had a serious argument with plaintiff and would try to prevent the case from coming to trial on June 7 but would postpone it as long as he could to defeat the annulment. Thereupon attorney Love explained to defendant that he had misconstrued his wife's actions; that she had been invited to a dinner party exclusively for ladies given by a middle-aged teacher; that each had taken her own part of the viands and that at the request of the hostess one of the latter's friends conveyed plaintiff to her home. In reply to Love's inquiry as to what defendant intended to accomplish by his actions defendant stated that he had merely wished to prevent plaintiff from getting an annulment so that she could not marry again; that he did not wish to file a cross-complaint for annulment or divorce.

*Ted Jordan* of Solano County averred that on June 4, 1945, defendant inquired by telephone of plaintiff's whereabouts; he was trying to locate her; she had brought an action for annulment to be heard on next Thursday; defendant stated that he did not purpose to attend the trial and that he did not care whether plaintiff obtained an annulment or not.

*Lloyd J. Seay* averred in addition to a number of facts declared by others that on May 30 defendant telephoned

from Vallejo and stated that he had mislaid his copy of the complaint and requested that another be sent to him; that he told defendant he had secured a stipulation to strike the third cause of action accusing defendant of sex perversion; that he advised defendant of the stipulation to set the case for trial on June 7. Defendant replied that his wife had told him the same thing but that he did not expect to be there. After receiving defendant's telegram of June 4 withdrawing his authorization and indicating his desire to withdraw his answer and to contest the action affiant appeared in court where he discovered the telegram addressed to the county clerk declaring defendant's desire to change attorneys and to file answer and cross-complaint.

### 5. DISCRETION WAS ABUSED

The doctrine that the granting of relief under section 473 is primarily committed to the discretion of the trial court does not mean that the notion, caprice or inordinate disregard of the opposing evidence should be allowed to control. Such decision must be rooted in a sound discretion, based upon a fair consideration of the total evidence and grounded upon principles of justice and fair dealing. It is not a mental discretion but an impartial discretion guided by fixed legal principles "to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice." (*Brill* v. *Fox*, 211 Cal. 739, 743 [297 P. 25]; *Bailey* v. *Taaffe*, 29 Cal. 422, 424.) The burden of proving excusable neglect is upon the defendant who must establish his thesis by a preponderance of the evidence. (*Bruskey* v. *Bruskey*, 4 Cal. App.2d 472, 479 [41 P.2d 203].) If from a scrutiny of all of the evidence in a proceeding under section 473 to vacate a judgment of annulment it is clear that the court abused its discretion in holding that there was excusable neglect on the part of the defendant, the order must be reversed. (*Essig* v. *Seaman*, 89 Cal.App. 295 [264 P. 552].) Where a defendant is possessed of his normal faculties and is capable of entering into contracts and transacting business, he must conform with and be guided by the rules of legal procedure in the conduct of a lawsuit as well as controlled by legal principles in his daily relations with his fellow men. (*Gillingham* v. *Lawrence*, 11 Cal.App. 231, 233 [104 P.2d 584].)

In the light of the foregoing authorities the order before us is clearly an abuse of discretion. Apart from the testimony of plaintiff and her mother, that of the witnesses Roberts, Jordan, Gelling and Seay preponderate to prove that not later than June 1 defendant knew that the trial was set for June 7 and then declared that he did not purpose to attend. Having failed to demonstrate that a different result would probably follow another trial, and no mistake, surprise, inadvertence or excusable neglect on the part of defendant having been shown, his application for relief should have been denied.

Order reversed.

Wilson, J., concurred.