[Civ. No. 5089.   Fourth Dist.   Nov. 18, 1955.]

ARTHUR B. THOMPSON et al., Appellants, v. ERNEST GOUBERT et al., Respondents.

Harmon C. Brown for Appellants.

Neblett, Walker & Sullivan and LeMoyne S. Badger for Respondents.

BARNARD, P. J.—This is an appeal from an order vacating a judgment following a motion made under section 473 of the Code of Civil Procedure.

A complaint for declaratory relief and damages was filed on September 13, 1954, alleging that the plaintiffs had leased 85 acres to the defendants; that the defendants, in farming said premises during 1953, had done or failed to do certain things "against the wishes" of the plaintiffs; that on October 27, 1953, written notice was given the defendants telling them that damage was claimed, that the plaintiffs would later contact them in anticipation of a settlement, and that they would thereafter be expected to do three things which were not specifically named in the lease; that during 1954 the defendants failed to do one of these things; and that a controversy had arisen in that the defendants claimed a right to do certain things, while the plaintiffs asserted that said things were contrary to the terms of the lease. In a second cause of action it was alleged that the plaintiffs had been damaged in the sum of $7,800.

The default of the defendants was entered by the clerk on September 24, 1954, and on October 11, 1954, a judgment was entered decreeing that the plaintiffs are entitled to cancel the lease and awarding them a judgment for $7,800. An execution was issued on October 20, 1954, and levied on the defendants' bank account. The defendants first learned of the judgment and the levy on October 21, and on the same day consulted an attorney.

On October 22, 1954, the defendants filed a motion and notice of motion to set aside their default and to vacate the

judgment on the ground of mistake or excusable neglect, and also filed a proposed answer setting forth facts which, if true, would be a complete defense to the action. In support of the motion they filed an affidavit stating that they are farmers and unfamiliar with legal proceedings; that they had never before sued or been sued; that they asked the process server who served them what the "papers" were for, and he replied, "I don't know"; that the summons was attached to the rear of the complaint and was never read in full, and its import was not realized by them until they consulted counsel; that they were told by others that they had to be ordered to appear in court on a date certain before they had to do anything in regard to the law suit; that because of these things they failed to answer the complaint in the time required; that they first learned of the default taken against them on October 21, and immediately employed attorneys to take proceedings to have the default and judgment vacated; and that they had been advised by their counsel and believed that they had a valid defense to the action upon its merits. In a supplemental affidavit filed on October 27, the defendants alleged that they had spent their childhood in a home in which the English language was not spoken; that by reason thereof, and in spite of certain schooling they had had, their ability to read and understand the English language was limited; that their business experience had been limited to farming, and neither of them had ever consulted or used an attorney prior to their learning of the levy of this execution; that at the time summons was served they were engaged in the peak of the harvest season, when a delay would have caused them irreparable damage; and that by reason of their inexperience and ignorance neither of them knew or realized that a judgment could be thus obtained against them.

The plaintiffs filed affidavits in opposition to the motion alleging that the defendants had voted in San Bernardino County some six times; that the father of the defendant husband owned certain property in San Bernardino County; that the defendants had had considerable schooling; that when a dispute arose in 1953 the plaintiffs told the defendant husband to seek advice from his banker or his lawyer; and that after the close of the 1953 growing season the plaintiff, on numerous occasions, told the defendant husband that he was going to sue him for damages. In addition, the affidavit of an outside person was filed alleging that during September, 1954, the defendant husband told the affiant that he had been

served with legal papers by the plaintiffs but that he wanted to save money by not hiring an attorney. At the hearing of the motion to set aside the default it was stipulated that the defendant husband, if sworn as a witness, would deny having made any such statement as the one just referred to, and that the court should consider this stipulation in reaching a decision on the motion.

After a hearing the court entered an order granting the motion to set aside the default and default judgment, recalling and quashing the levy of execution, and permitting the defendants to file their answer. This appeal followed.

■ "It is the well-settled policy of the law to have legal controversies tried upon their merits, and unless it can be determined as a matter of law that a trial court has abused its discretion in setting aside the default of a party and permitting an answer to be filed, the court on appeal will not reverse such an order." (*Kalson* v. *Percival*, 217 Cal. 568 [20 P.2d 330].) ■ There must be a clear showing of abuse of discretion before such an order will be reversed, and the burden of showing such abuse of discretion is on the appellant. (*Stub* v. *Harrison*, 35 Cal.App.2d 685 [96 P.2d 979].) ■ Because of the purpose of the statute and the policy of applying it liberally in order to permit the presentation of a substantial defense, the appellate court listens more readily to an appeal from an order denying relief than to one granting relief. (*Brill* v. *Fox*, 211 Cal. 739 [297 P. 25].) ■ Any doubt as to the propriety of setting aside a default should be resolved in favor of the application, to the end that a trial on the merits may be had. (14 Cal.Jur., p. 1076, and cases there cited.)

The appellants do not question these rules but contend that an abuse of discretion here appears, because the excuses offered by the respondents were not sufficient to show any mistake or neglect which could be found to be excusable. They rely on *Weinberger* v. *Manning*, 50 Cal.App.2d 494 [123 P.2d 531]; *Fink & Schindler Co.* v. *Gavros*, 72 Cal.App. 688 [237 P. 1083]; *Elms* v. *Elms*, 72 Cal.App.2d 508 [164 P.2d 936]; and *Gilio* v. *Campbell*, 114 Cal.App.2d Supp. 853 [250 P.2d 373]. In the Weinberger case, the defendant disregarded repeated warnings from attorneys, the clerk and a friend; took no action for 83 days after entry of the default; and displayed "an attitude of contemptuous disregard for legal process." In the Fink & Schindler case the defendant consulted an attorney before the time to answer, but relied on an unwarranted assumption that this attorney represented

another party and would also protect his interest. In the Elms case, the defendant intentionally defaulted and then changed his mind, and, although he knew the date of the trial eight days ahead, declared that he did not intend to appear at the trial. In the Gilio case the defendant was warned by the constable who served the summons and by the attorney for the plaintiff, after judgment was entered, and still took no action until a month later.

In the instant case, the respondents had had no legal experience; they had been told that they would be personally contacted with the view of a settlement when the amount of damage claimed for 1953 was ascertained; they asked the person who served the summons what the "papers" meant, and were told that he did not know; and they were told by others that they would receive notice of a date certain when they were expected to appear. It is not entirely unreasonable that people of such limited experience would not grasp the full and legal meaning of the summons at the back of the copy of the complaint, especially in view of the other circumstances which here appear. Aside from one matter of hearsay and one matter which was directly contradicted by other evidence, the affidavits filed by the appellants contain nothing material to the question before the court, and no showing was made that any prejudice would be suffered by the slight delay. The respondents acted immediately upon learning that a judgment had been entered, and the motion was heard by the same judge who entered the judgment. In view of the nature of the case, one for declaratory relief and for damages based on one party's interpretation of the lease, the ends of justice naturally called for a hearing on the merits. While some negligence on the part of the respondents may appear, it cannot be said as a matter of law that their neglect and mistake were inexcusable. The matter was one within the discretion of the trial court, and it does not clearly appear that such discretion was abused. (*Hambrick* v. *Hambrick,* 77 Cal.App.2d 372 [175 P.2d 269].)

The order appealed from is affirmed.

Griffin, J., and Mussell, J., concurred.