## Appellate Department, Superior Court, Fresno

[Civ. A. No. 89. Jan. 30, 1961.]

RAMSEY TRUCKING COMPANY, INC. (a Corporation), Appellant, v. R. I. MITCHELL, Respondent.

Davenport, Mayo & Lawrence for Appellant.

Leon Boro for Respondent.

CONLEY, J.—Plaintiff sued defendant on the claim that in servicing a GMC truck he "added by mistake, with inadvertence and neglect, ten pounds of gear oil instead of 140 weight mineral oil," and that as a proximate result thereof the vehicle lost its rear end, to the damage of plaintiff in the sum of $2,209.54. The defendant was duly served and no appearance was filed for him within the time limited by law. A default judgment was granted in the sum of $2,209.54 and $8.00 costs on August 2, 1960. Notice of entry of judgment having been served by mail on the defendant on August 3, 1960, he consulted his attorney, who filed a motion to set aside the default and the judgment based thereon. The court granted

the motion, upon condition that the defendant pay to the attorney for the plaintiff the sum of $200 "to cover time and costs of Plaintiff and Plaintiff's Attorney in presenting the evidence on Default and Motion opposing the Motion to Set Aside Default." Within the 10-day period, counsel for defendant mailed a check for $200 to the attorney for the plaintiff; the check was cashed by him and the proceeds retained in his office account. Plaintiff appealed from the order setting aside the default judgment.

At the inception of the hearing, defendant made a motion to dismiss the appeal, "upon the grounds that the Plaintiff and Appellant voluntarily accepted the benefit of the order appealed from and such acceptance is a bar to the prosecution of said appeal." This court denies the motion to dismiss the appeal. The lower court's order granting a new trial was conditioned upon the payment of $200 to plaintiff's counsel; it contemplated payment in cash and not by check. Plaintiff's counsel did not unconditionally accept the $200; as shown by his declaration in opposition to the motion to dismiss he held a conversation by telephone with defendant's attorney and "stated to Mr. Boro that he would return the check to him. He stated to me that I should retain the check until such time as the defendant's purported insurer took action in this matter or until a decision was reached in the present appeal. Upon this statement by Mr. Boro I then deposited said check in my office account and said monies are presently on deposit therein." Counsel for the plaintiff also tendered back to the defendant in open court the $200 if the order of the lower court setting aside the default should be reversed. The conditional retention in the office account of the $200 by plaintiff's counsel did not "clearly and unmistakably show acquiescence"; it was not "unconditional, voluntary and absolute." (*Duncan* v. *Duncan,* 175 Cal. 693, 695 [167 P. 141]; *Gudelj* v. *Gudelj,* 41 Cal.2d 202, 214 [259 P.2d 656]; *Estate of Poisl,* 48 Cal.2d 334, 338 [309 P.2d 817].)

In considering the appeal on its merits, the question to be answered by this court is whether the trial court exercised its discretion within legitimate limits in relieving the defendant "from a judgment . . . taken against him through his mistake, inadvertence, surprise or excusable neglect." (Code Civ. Proc., § 473.) The judges of the appellate department of this court cannot decide the issue by asking themselves whether, if they had been in the trial judge's place, they would have denied the application to set aside the default. Discretion presupposes the right on the part of the trial judge

to adopt one of two or more different conclusions on the facts before him, if such conclusion could have been reached by a reasonable man on the evidence.

Unquestionably the defendant was negligent; his reliance on section 473 of the Code of Civil Procedure is an *ipso facto* admission of his neglect. The question is whether the neglect was excusable. It is elementary that the code section in question is a remedial statute strongly favored by the courts and "liberally applied to carry out the policy of permitting a trial on the merits." (3 Witkin's California Procedure, p. 2098; *Baratti* v. *Baratti,* 109 Cal.App.2d 917, 921 [242 P.2d 22]; *Riskin* v. *Towers,* 24 Cal.2d 274 [148 P.2d 611, 153 A.L.R. 442]; *Stub* v. *Harrison,* 35 Cal.App.2d 685 [96 P.2d 979]; *Miller* v. *Lee,* 52 Cal.App.2d 10 [125 P.2d 627]; *Vartanian* v. *Croll,* 117 Cal.App.2d 639 [256 P.2d 1022].)

 The declarations filed on behalf of defendant in support of his motion to set aside the default show that he first learned of the claim of plaintiff on December 18, 1959, on which date he had in full force and effect an Industrial Indemnity insurance policy insuring him and his employees against any claims arising out of workmanship and materials, and presumably fully covering him as to liability, with the usual policy provisions for a defense by the insurer against claims made; that his service station dealt in products of the Richfield Oil Corporation; that one Ben McDowell, an employee of the Richfield Oil Corporation, was informed of the claim and made an investigation of the details thereof and that the said McDowell advised defendant ". . . that he had personally turned over the Richfield Oil Corporation file on this claim to one of the adjusters of the Industrial Indemnity Insurance Co. at 3130 North Fresno Street, Fresno, California, and that they were placing one of their adjusters on the claim immediately; that he had permitted the Industrial Indemnity Co. to photostat the Richfield Oil Corporation file; that some time thereafter, another adjuster from the Industrial Indemnity Ins. Co. contacted the said Ben McDowell and informed him that the Industrial Indemnity Ins. Co. would handle the Ramsey Trucking Co. Inc. claim, and that R. I. Mitchell would not have to give the matter any further attention; that I relied upon the Industrial Indemnity Company to handle this claim for me, and relied upon them to appear in any law suit that might be filed against me, and relied upon them to furnish an attorney for the purpose of contesting any law suit that might be filed by Ramsey Trucking Co. Inc."

The upper courts of this state have more than once approved as a legitimate excuse for failure to file an appearance the commitment or undertaking of a third person to take care of the claim and defend the suit (*Sofuye* v. *Pieters-Wheeler Seed Co.*, 62 Cal.App. 198 [216 P. 990]; *Newton* v. *De Armond*, 60 Cal.App. 231 [212 P. 630]); specific instances of relief following neglect of this type are normally accompanied by a showing that summons and complaint were actually forwarded by the defendant to the person who had given him a commitment to defend, and appellant maintains that this is an essential element in order to justify a trial court in setting aside a default. We do not think such a showing need necessarily be made in all cases. Anyone familiar with modern business practices involving the superintendence and tutelage by large corporations of their retailers, and the diversified and careful handling of tort claims by insurance representatives, could well draw the conclusion that it is not fatally unreasonable in all cases for a busy local merchant to rely implicitly upon an undertaking by authorized employees of a large oil company and of an insurance company to take care of a tort claim in all of its incidents. There was unquestionably serious neglect by the defendant, and we do not wish to be understood to be laying down a general rule of excuse applicable to all similar cases. Each tub must rest on its own bottom, and each case on its own facts. On the basis of the entire record in this case we believe that the trial judge had a sufficient area of discretion to permit him to set aside the default and order a trial on the merits. In *Jones* v. *Title Guaranty & Trust Co.*, 178 Cal. 375, 376 [173 P. 586], the Supreme Court says: "This court has always looked with favor upon orders excusing defaults and permitting controversies to be heard upon their merits. Such orders are rarely reversed, and never 'unless it clearly appears that there has been a plain abuse of discretion.' "

▪ And the opinion in *Sofuye* v. *Pieters-Wheeler Seed Co.*, 62 Cal.App. 198 [216 P. 990], holds: "An application for relief under section 473 of the Code of Civil Procedure from the consequences of a default judgment is addressed to the sound judicial discretion of the court to which such application is made; and, unless it can be said from the face of the record on appeal that, in granting or disallowing such a motion, the *nisi prius* court has abused the discretion committed to it in disposing of such a proceeding, the order will not be disturbed on appeal.

■ "It has for many years uniformly been held in this state that the power vested in trial courts by section 473 should be freely and liberally exercised by said courts to the end that they might 'make and direct their proceedings so as to dispose of cases upon their substantial merits, and without unreasonable delay, regarding mere technicalities as obstacles to be avoided rather than principles to which effect is to be given in derogation of substantial rights.' "

Accordingly, the motion to dismiss the appeal is denied and the judgment is affirmed.

Goldstein, J., concurred.

KELLAS, P. J., Dissenting.—As to the motion of respondent to dismiss the appeal, I concur with the order made by this court for the reasons set forth in the opinion of Judge Conley. I cannot, however, concur with the order of the majority of this court affirming the trial court's order on the appeal.

Whether or not there was an abuse of discretion on the part of the trial court depends upon the evidentiary support found in the declarations presented by the respondent herein to be relieved of the default entered against him.

"Further, as in any other case, the trial court's determination of the facts as found from the affidavits of the parties will be conclusive upon the appellate court (*Nomellini Construction Co.* v. *Deane*, 160 Cal.App.2d 57, 59 [324 P.2d 654]), but if the facts as stated in the moving party's affidavit do not constitute valid grounds for the relief sought, the trial court's action in setting aside the default will be reversed (*Benjamin* v. *Dalmo Mfg. Co.*, 31 Cal.2d 523 [190 P.2d 593]; *Yarbrough* v. *Yarbrough*, 144 Cal.App.2d 610 [301 P.2d 426]). Hence the question narrows to whether or not the facts stated in the affidavit of defendant's counsel show reasonable grounds for setting aside the default judgment." *Romer, O'Connor & Co.* v. *Huffman*, 171 Cal.App.2d 342 at p. 347 [341 P.2d 62].

Such evidence and the inferences which properly might be drawn therefrom of course must be viewed by this court in light of the provisions of section 473 of the Code of Civil Procedure and the many cases decided by our higher courts in the interpretation and application of that statute. This court, as well as the trial court, must act within such boundaries prescribed; and although this court has no right to substitute its discretion for that of the trial court, this court

is charged with the examination of the record before it to determine if there was an "abuse of discretion" as that phrase also has been defined by the appellate courts of this state. We need not repeat such guideposts as have been prescribed by our courts. They are too well known and have been restated with reasonable consistency from the case of *Bailey* v. *Taaffe* (1866), 29 Cal. 422 to *Luz* v. *Lopes* (1960), *(Cal.App.) 6 Cal.Rptr. 412.

There is no contention that the declarations filed by respondent reflect "surprise" or "inadvertence" as grounds for relief. Was there then any "mistake" or "excusable neglect" shown by such declarations?

Both of these terms have been explored and passed on by this court in *Gilio* v. *Campbell*, 114 Cal.App.2d Supp. 853 [250 P.2d 373], wherein the court, speaking through the Honorable George M. DeWolf, states at page 857: "Passing to the question of "excusable neglect," that term has been held to mean that neglect which might have been the act of a reasonably prudent person under the same circumstances. (*Elms* v. *Elms*, 72 Cal.App.2d 508, 512 [164 P.2d 936])."

By a diligent review of the record in this case, I am not persuaded that either "mistake" or "excusable neglect" is shown, applying to those terms the interpretation placed thereon by our appellate courts.

There is no intimation that the plaintiff at any time acted unfairly, or in any way misled the defendant in taking his default. At no time did defendant communicate with the plaintiff or the plaintiff's attorney, either before or after this action was filed. He did nothing with the process served upon him, except (we must assume) wilfully disregard it. Had defendant delivered the process to the representative of the Richfield Oil Company, whose assurance he apparently accepted some four or five months previous thereto in regard to the claim upon which said action was predicated, or to the Industrial Indemnity Insurance Company, with which company he states he had an insurance policy, there would have been at least one solid circumstance upon which he could rest his conduct.

This case does not fall within that limited field where one has been justified in relying upon the assurance of a third party such as an assurance made by a codefendant employer.

---

*A hearing was granted by the Supreme Court on September 7, 1960. The final opinion of that court is reported in 55 Cal.2d 54 [10 Cal.Rptr. 161, 358 P.2d 289].

The cases cited and relied upon by the respondent are distinguishable.

Justice Peters has set forth clearly the rule of law, which I feel is applicable in this case, in the case of *Yarbrough* v. *Yarbrough, supra*, 144 Cal.App.2d at p. 615: The cases are clear to the effect that where the defendant, with full knowledge of the proceedings, and without being misled by the opposing party or counsel, fails to take action to protect his interests until after the default, it is an abuse of discretion to set the default aside. (*Elms* v. *Elms*, 72 Cal.App.2d 508 [164 P.2d 936]; *Essig* v. *Seaman*, 89 Cal.App. 295 [264 P. 552]; *Bailey* v. *Taaffe*, 29 Cal. 422; *Fink & Schindler Co.* v. *Gavros*, 72 Cal. App. 688 [237 P. 1083]; *Weinberger* v. *Manning*, 50 Cal.App. 2d 494 [123 P.2d 531]; *Dunn* v. *Standard Acc. Ins. Co.*, 114 Cal.App. 208 [299 P. 575].) Nor does the trial court have the legal power to set aside the default simply because the defendant did not realize the legal effect of failing to file an answer."

And at page 616: "There can be no doubt that a trial court may find excusable neglect or surprise where settlement negotiations are being had between counsel, and where there is an oral or implied understanding that no default will be taken without notice, and counsel takes such a default without notice. [Cases cited.] But those cases are predicated upon the fact that opposing counsel acted so as to deceive or mislead the defaulting counsel."

As disclosed by the declarations filed by respondent, the conduct of the defendant does not measure up to "the act of a reasonably prudent person under the same circumstances." I would, therefore, reverse the order of the trial court.